**NABORS CORPORATE SERVICES, INC. f/k/a Pool Offshore Services, Appellant**

v.

**NORTHFIELD INSURANCE COMPANY, Appellee.**

**No. 14–03–00285–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 16, 2004.

James M. Tompkins, Kristi L. Hamilton, Houston, for appellant.

John C. Tollefon, Dallas, Michael A. Orlando, Houston, for appellee.

Panel consists of Justices EDELMAN, FROST, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this declaratory judgment action, Pool Company Texas, Ltd.,[1] ("Pool") appeals the trial court's grant of summary judgment dismissing Pool's claims against Abraxas Petroleum Corporation ("Abraxas") and Northfield Insurance Company ("Northfield"). Specifically, Pool contends that: (1) the indemnity provision contained in the Master Service Agreement between Abraxas and Pool was void under the Texas Oilfield Anti–Indemnity Act ("TO-AIA");[2] and (2) because Abraxas failed to

---

1. Although this case is styled as *Nabors Corporate Services, Inc., f/k/a Pool Offshore Services v. Northfield Ins. Co.*, the parties have stipulated that "Pool Company Texas, Ltd." is the correct party name to be used.

2. TEX. CIV. PRAC. & REM.CODE §§ 127.001–.007.

request reimbursement from Northfield under the Texas Property and Casualty Insurance and Guaranty Act ("TPCIGA"),[3] Pool paid a debt owed by Abraxas or Northfield and should be reimbursed. We affirm.

## I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

In 1997, Abraxas hired Pool to perform work on an oil and gas lease owned and operated by Abraxas. As is customary in the oil and gas industry, Abraxas and Pool entered into a Master Service Agreement (the "Agreement") which contained, in part, mutual indemnity provisions whereby each party agreed to indemnify the other for any claims or causes of action, without limit, for any injuries or death suffered by their respective employees. In the Agreement, each party also agreed to acquire insurance to cover these indemnity obligations[4] in accordance with the safe harbor provisions of the TOAIA.[5] Pool's general liability insurer was Reliance Insurance Company ("Reliance")[6] and Abraxas was insured by Northfield.

In 1999, a Pool employee, Michael Carter, was fatally injured. Carter's heirs and estate filed suit (the "Carter litigation") against Abraxas, and other defendants not parties to this appeal, asserting negligence claims. When Abraxas presented the claim to Northfield, Northfield

hired counsel to represent Abraxas; counsel, in turn, contacted Pool and demanded Pool defend and indemnify Abraxas in accordance with the Agreement. Pool agreed, subject to its right under Texas law to deny indemnification for any grossly negligent conduct by Abraxas or any award for punitive damages. Pool then hired counsel to defend Abraxas.

In September 2001, the Carter litigation was settled on behalf of Abraxas for $1,545,000.[7] However, prior to funding the settlement, Pool's insurer, Reliance, became insolvent.[8] Suit was filed by the Carter plaintiffs against Abraxas to enforce the settlement agreement, and Abraxas looked to Pool by virtue of the indemnity provision contained in the Agreement. Pool contributed $1,000,000 to the settlement by Abraxas, reserving all rights and causes of action, then demanded reimbursement from Northfield. Consequently, Northfield filed this declaratory judgment action, asserting it did not owe any reimbursement to Pool. Pool filed counterclaims against Northfield and third-party claims against Abraxas,[9] alleging both parties had violated the TPCIGA and asserting claims for indemnity and unjust enrichment against both parties. Northfield filed a "Motion to Dismiss and/or Summary Judgment," requesting the trial court dismiss Pool's claims against Abraxas and Abraxas's claims against Northfield in the event Abraxas

---

3. TEX. INS.CODE art. 21.28–C.

4. The Agreement also required, with respect to mutual indemnities, that each party name the other as an additional insured and their respective insurer's were to waive any rights of subrogation.

5. TEX. CIV. PRAC. & REM.CODE § 127.005 (excluding from the purview of the TOAIA mutual indemnity agreements providing that the parties agree to support the indemnity obligations with insurance).

6. Pool's policy with Reliance had a $1,000,000 primary liability limit.

7. Specifically, as stated in the settlement agreement, the claim was settled on behalf of "Abraxas and its insurers."

8. Reliance was designated as an impaired insurer on October 5, 2001.

9. Abraxas filed counterclaims against Pool and also filed a separate lawsuit against Northfield.

should be held liable to Pool for any reimbursement.

The trial court signed a final judgment granting Northfield's motion and (1) dismissing with prejudice, Pool's claims against Abraxas and Northfield; (2) dismissing without prejudice, Abraxas's counterclaims against Pool; and (3) dismissing as moot, Abraxas's cross-claims for reimbursement against Northfield. The trial court severed all other remaining claims to permit appeal of the judgment.

## II. ANALYSIS

### A. Abraxas as Appellee

■ As an initial matter, Abraxas asserts it is an appellee in this proceeding and requests that we accept its brief as such. Abraxas argues it falls within the definition of "appellee" as that term is defined in Texas Rule of Appellate Procedure 3.1(c) because it is adverse to Pool and to Northfield and its direct interests are affected by the outcome of this appeal. Pool and Northfield do not contend that Abraxas is not a proper party to this appeal or otherwise contest Abraxas's participation.[10]

Rule of Appellate Procedure 3.1 defines an appellee as "a party adverse to an appellant." TEX.R.APP. P. 3.1(c). Here, the trial court's final judgment dismissed Pool's third-party claims against Abraxas, dismissed Abraxas's original counterclaims against Pool, and dismissed Abraxas's cross-claims against Northfield. The final judgment then places Abraxas in a position on appeal that is adverse to Pool and directly impacts Abraxas's interests in the case. We conclude Abraxas falls within the definition of appellee contained in Rule 3.1 and thus, may participate in this appeal.[11] *Accord Gray v. Allen,* 41 S.W.3d 330, 331 (Tex.App.-Fort Worth 2001, no pet.) (noting that an appellee was not a proper party because the trial court did not render judgment against her and the appellant had not raised any issues on appeal involving her).

### B. Standard of Review

Although Northfield's motion was entitled "Motion to Dismiss and/or Summary Judgment," in the motion Northfield primarily argued that there was no evidence to support Pool's claims. Also, it appears the court's judgment was rendered based on evidence outside the pleadings. Therefore, we construe Northfield's motion as a no-evidence summary judgment motion and review it using a no-evidence summary judgment standard. *See, e.g., Marts ex rel. Marts v. Transp. Ins. Co.,* 111 S.W.3d 699, 702 (Tex.App.-Fort Worth 2003, pet. denied).

After an adequate time for discovery, a party may move for summary judgment on the basis that there is no evidence of an essential element of the nonmovant's cause of action. TEX.R. CIV. P. 166a(i). The motion must state the elements for which there is no evidence. *Id.; Marts,* 111 S.W.3d at 703. To defeat a no-evidence summary judgment motion, a party need only point out evidence that raises a genuine issue of material fact on the challenged elements. TEX.R. CIV. P. 166a(i) cmt.; *Russo v. Smith Int'l, Inc.,* 93 S.W.3d 428,

---

10. Abraxas states it raises the issue because it was Northfield's motion which effectuated the dismissal of Pool's third-party claims against Abraxas and Pool failed to include Abraxas as a party in its docketing statement. Abraxas has filed its own docketing statement regarding this appeal.

11. This Court has jurisdiction over all parties to the trial court's judgment. *See* TEX.R.APP. P. 25.1(b) (providing that the filing of a notice of appeal by any party invokes jurisdiction over all parties to the trial court's judgment).

433 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). We review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences, and sustain the judgment if (1) there is a complete absence of proof of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 284 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

### C. Assignment of Error

■ We begin our analysis by addressing Abraxas's and Northfield's argument that Pool did not assign error based on its unjust enrichment claim and, therefore, we must affirm the trial court's ruling on this ground.

■ When a trial court's summary judgment rests upon more than one independent ground, as the judgment does here, the aggrieved party must assign error to each ground or the judgment will be affirmed on any ground not complained of. *Williamson v. State Farm Lloyds*, 76 S.W.3d 64, 67 (Tex.App.-Houston [14th Dist.] 2002, no pet.). However, the statement of an issue or point in an appellate brief is treated as covering every subsidiary question fairly included within that issue. Tex.R.App. P. 38.1(e). An issue is sufficient if it directs the appellate court's attention to the error complained of. *Tex. Mexican Ry. Co. v. Bouchet*, 963 S.W.2d 52, 54 (Tex.1998); *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 843 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Further, appeals should be judged on the merits of the controversies fairly presented rather than on hyper-technical waiver issues. *Stephenson*, 16 S.W.3d at 843–44.

In its appellate brief, Pool argued in part that the indemnity provision at issue was void under the TOAIA. In summation of its argument, Pool stated that because the indemnity provision was invalid, it was entitled to reimbursement based on the theories of "either legal indemnity (equitable subrogation) or unjust enrichment (quantum meruit)." In addition, responding to Northfield's and Abraxas's waiver argument, Pool asserted that: (1) Northfield had specifically argued in its motion that Pool's equitable claims were negated by the contractual indemnity provision, thus prompting Pool's argument in its original brief; and (2) Pool's equitable claims stemmed from the purported invalidity of the indemnity provision. Pool's statements sufficiently direct our attention to its argument on appeal, that its equitable claims survived Northfield's motion due to the invalidity of the contractual indemnity provision. We decline to affirm the judgment based on the technical briefing deficiency argued by Abraxas and Northfield and, accordingly, address Pool's issues.

### C. Texas Oilfield Anti–Indemnity Act

■ In its first issue, Pool argues the trial court erred in granting Northfield's motion because once Reliance was placed into receivership, there was no longer any supporting insurance coverage and the indemnity provision contained in the Agreement was rendered void under the TOAIA.[12] Pool reasons that because the purpose behind the TOAIA is to protect contractors from unfair indemnity obligations, and Pool was no longer protected due to Reliance's insolvency, the TOAIA serves to invalidate the indemnity provi-

---

12. *See* Tex. Civ. Prac. & Rem.Code §§ 127.002– .003, 127.005.

sion. In support of its contentions, Pool relies solely on the provisions of the TOAIA and thus, we construe that statute.

In construing a statute, our objective is to determine and give effect to the Legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003); *Guthery v. Taylor*, 112 S.W.3d 715, 721–22 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *see also* TEX. GOV'T CODE § 312.005. If possible, we must ascertain the Legislature's intent from the language of the statute and not resort to extraneous matters for an intent not stated in the statute. *Guthery*, 112 S.W.3d at 722. We look first to the "plain and common meaning of the statute's words," presuming the Legislature intended the plain meaning of those words used. *City of San Antonio*, 111 S.W.3d at 25; *Tex–Air Helicopters, Inc. v. Galveston County Appraisal Review Bd.*, 76 S.W.3d 575, 581 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Also, we determine legislative intent from the entire act, not just its isolated portions, and read the statute as a whole, interpreting it to give effect to every part. *City of San Antonio*, 111 S.W.3d at 25.

In 1973, the TOAIA was enacted because oil and gas contractors agreeing to indemnify operators had encountered difficulties in obtaining insurance to cover liabilities that might arise from the indemnity obligations. *Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 348 (Tex.2000). As a result, those contractors were subjected to substantial liabilities with no means of insuring against those obligations. *Id.* To address this, the Leg-

islature found that "an inequity is fostered on certain contractors by the indemnity provisions in certain agreements pertaining to wells for oil, gas, or water or to mines for other minerals" and determined that certain agreements providing for "indemnification of a negligent indemnitee are against the public policy of this state." TEX. CIV. PRAC. & REM.CODE §§ 127.002(a)-(b); *see id.* § 127.003 ("[A] covenant, promise, agreement . . . affecting an agreement pertaining to a well for oil [or] gas, . . . is void if it purports to indemnify a person against loss or liability for damage" arising from personal injury or death); *Ken Petroleum*, 24 S.W.3d at 349.

However, not all indemnity agreements in the oil and gas industry are void. Specifically, an indemnity agreement wherein "the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor," is excluded from the purview of the TOAIA.[13] TEX. CIV. PRAC. & REM.CODE § 127.005(a). Only agreements falling outside of this exclusion are void. *Ken Petroleum*, 24 S.W.3d at 349.

The plain language of the statute does not support Pool's argument. To fall within the TOAIA exclusion under section 127.005, the parties need only "agree in writing that the indemnity obligation *will be* supported by liability insurance coverage *to be* furnished by the indemnitor. . . ." TEX. CIV. PRAC. & REM.CODE § 127.005(a) (emphasis added). Thus, once the parties execute the applicable agreement, the TOAIA exception applies. *Maxus Explora-*

---

**13.** This exclusion is subject to the following limitations:

    (b) With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor

has agreed to obtain for the benefit of the other party as indemnitee.

    (c) With respect to a unilateral indemnity obligation, the amount of insurance required may not exceed $500,000.

TEX. CIV. PRAC. & REM.CODE § 127.005.

*tion Co. v. Moran Bros.,* 773 S.W.2d 358, 361 n. 3 (Tex.App.-Dallas 1989), *aff'd in part, rev'd in part,* 817 S.W.2d 50 (Tex. 1991) (addressing an issue of "self-insurance" under the TOAIA, noting the statute requires only that there be a written agreement that insurance coverage *will be* provided, and that the statute does not serve to void an indemnity provision if the coverage does not in fact exist); *see Ken Petroleum,* 24 S.W.3d at 351 (finding that section 127.005 only requires a writing to memorialize that each party has agreed to provide insurance to support the indemnity obligations); *see also Boyd v. Amoco Prod. Co.,* 786 S.W.2d 528, 531 (Tex.App.-Eastland 1990, no writ) (construing an oil and gas well contract and concluding that "current liability insurance" referred to insurance on the date of injury). Once an agreement falls within the statute's exception, there is no language in the TOAIA which would retroactively void the agreement. Thus, once Pool and Abraxas agreed in writing that the indemnities would be supported by insurance, they complied with the safe harbor provisions of the TOAIA.[14]

The words in the statute "will be supported" and "to be furnished" suggest the Legislature did not intend the TOAIA govern *all* aspects of the underlying insurance or void indemnity agreements should the underlying insurance fail. Instead, these words suggest that the Legislature intended the parties' indemnity obligations and the underlying insurance be controlled by the terms of the parties' written agreements. Details regarding insurance requirements—other than minimum amounts—and contracting for risks associated with those requirements are matters that presumably would be addressed through negotiations between the parties. Moreover, if the Legislature had intended to invalidate indemnity provisions because of an insurer's subsequent insolvency, it easily could have done so by inserting a provision to that effect.

Here, as Pool acknowledges, there are a number of provisions within the Agreement which govern the underlying insurance. For example, under paragraph 13 of the Agreement, entitled "Insurance," Pool agreed to "secure and maintain during the term of this agreement the insurance in the types and amounts ... as shown in Exhibit A, with companies satisfactory to [Abraxas]" and further provided that Pool would furnish certificates of said insurance. Also in that paragraph, boxed off and in bold letters, was the following:

IF OPERATIONS ARE PERFORMED IN TEXAS OR UNDER TEXAS LAW, BOTH PARTIES AGREE THAT:

IN ORDER TO BE IN COMPLIANCE WITH THE [TOAIA] REGARDING INDEMNIFICATION MUTUALLY ASSUMED FOR THE OTHER PARTY'S SOLE OR CONCURRENT NEGLIGENCE, EACH PARTY AGREES TO CARRY SUPPORTING INSURANCE IN EQUAL AMOUNTS OF THE TYPES AND IN THE MINIMUM AMOUNTS AS SPECIFIED IN THE INSURANCE REQUIREMENTS HEREUNDER; AND EACH PARTY AGREES THAT THE MAXIMUM AMOUNT OF SUCH SUPPORTING INSURANCE CARRIED IN EQUAL AMOUNTS SHALL BE THE LOWER OF THE MAXIMUM AMOUNT CARRIED BY EITHER

14. Importantly, Pool does not argue that the indemnity provision was invalid at the time of Carter's fatal injury and indeed, concedes that the subject indemnity provision was valid under the TOAIA at the time the Agreement was executed. Pool also acknowledges that it did, in fact, procure the insurance as required under the TOAIA and in accordance with the Agreement.

PARTY AS LONG AS SUCH AMOUNT IS IN EXCESS OF THE MINIMUM AMOUNT SPECIFIED....

IN TEXAS, IF THE CONTRACTOR DOES NOT CARRY INSURANCE IN THE MINIMUM AMOUNTS AS SPECIFIED IN THE INSURANCE REQUIREMENTS IN REGARD TO THE MUTUAL INDEMNITY OBLIGATIONS THEN IT IS AGREED THAT THE CONTRACTOR HAS APPROVED SELF–INSURANCE AS STATED IN THE [TOAIA] AND THE MUTUAL INDEMNIFICATION AMOUNT SHALL BE THE MAXIMUM AMOUNT CARRIED BY THE COMPANY.

The Agreement further provides in paragraph 9, that "[c]ontractor's indemnity shall be without regard to and without any right of contribution from any insurance maintained by [Abraxas] pursuant to Paragraph 13." Exhibit A to the Agreement provides that Pool, at its own expense, will maintain "with respect to and for the duration of this Contract" the necessary insurance policies and that "[n]one of such insurance shall be cancelled, altered, or amended" without thirty days' notice to Abraxas.[15] We read these provisions and the contract as a whole as indicating an intent by the parties that Pool acquire and maintain the requisite insurance for the duration of the Agreement, and thus, bear the risk of any loss associated with its underlying insurance obligations.[16] There is nothing in the contract which excepts from those obligations the possibility Pool's insurer may become insolvent, and nothing in the contract which indicates

Abraxas contracted to bear liability for that contingency. *Accord Ken Petroleum,* 24 S.W.3d at 352–55 (finding that section 127.005(b) did not serve to invalidate an indemnity provision, construing the TOAIA to give effect to the contract between the parties).

We also note that the TOAIA has been amended since its enactment, beginning in 1989, because liability insurance has become more readily available to contractors to support their indemnity obligations. *Id.* at 349. These amendments were intended to make the statute less restrictive. *Id.* This change in the circumstances surrounding the enactment of the TOAIA makes Pool's argument—that to give full effect to the statute, we must read the TOAIA as invalidating the mutual indemnity provisions here—less persuasive.

Finally, acknowledging a lack of Texas precedent on the issue, Pool relies on a Fifth Circuit case, *Ogea v. Loffland Bros. Co.,* 622 F.2d 186 (5th Cir.1980), to argue that, if read as a whole, the contract provides that Pool does not have any indemnity obligations for those amounts covered by insurance. In *Ogea,* after an injury occurred and the contractor paid a portion of the settlement, it pursued reimbursement against the operator, Phillips Petroleum Company. *Id.* at 187–88. In its analysis, the *Ogea* court noted that during the negotiations, Phillips had agreed to the indemnity provision only if the contractor agreed to certain insurance requirements; however, the contractor failed to purchase the necessary insurance. *Id.* at 188. Under those circumstances, the court stated

---

**15.** Abraxas argues the Agreement also provides that under the circumstances of this case, Pool is deemed to be self-insured and thus, liable for the $1,000,000. However, construction of that particular provision is not necessary to the resolution of this issue.

**16.** *See Autobond Acceptance Corp. v. Progressive Northern Ins. Co.,* 76 S.W.3d 489, 493 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (stating that all parts of the contract must be read together, giving meaning to the whole contract).

that an "either-or" analysis was appropriate, meaning either the contractor purchased the insurance and, because the claim fell below those insurance limits, Phillips would not have any obligation to reimburse the contractor, or the contractor breached the agreement by not buying the insurance and was therefore liable because it breached the insurance provision. *Id.* at 188–89. Essentially, by pursuing reimbursement, the contractor in *Ogea* was requesting the court look only at the indemnity provision. The court declined, noting that when the contract was read as a whole, the parties intended Phillips would not be held liable for any amounts covered by insurance, but after that amount "the indemnity provisions would come into effect." *Id.* at 190.

From this, Pool argues that its indemnity obligations come into existence only after the $1,000,000 limit, and it should be reimbursed. However, the *Ogea* case is inapposite to the situation presented by this case. Here, the question is whether the TOAIA, because of its underlying purpose, operates to invalidate a mutual indemnity provision when an indemnitor's insurer becomes insolvent, placing the burden on the indemnitee for the insurer's insolvency. *Ogea* does not address this issue. Also, notably, the *Ogea* court construed the indemnity obligations of the parties in light of the entire contract, just as we do here. *Id.* at 189–90; *see also Ken Petroleum*, 24 S.W.3d at 352–55 (construing the TOAIA to give effect to the contract between the parties). In this case, each party agreed to indemnify the other should an injury occur regarding that party's employee. It is undisputed that Carter was Pool's employee and therefore, Pool had a contractual obligation to indemnify Abraxas regarding that accident. Pool accepted this indemnity obligation. Pool has not directed us to any provision within the TOAIA which would serve to invalidate this contractual obligation under the circumstances of this case, nor has Pool provided evidence that its contractual indemnity obligations became void.

■■■ In sum, we find that the TOAIA neither alters Pool's indemnity obligations because its insurer became insolvent prior to funding the settlement, nor requires Abraxas to reimburse Pool for the money paid to settle the underlying claim. Further, because we find the indemnity provision was not voided by the TOAIA, Pool is unable to assert its claims for unjust enrichment or quantum meruit against Abraxas because a valid contractual provision exists that covers the dispute.[17] Accordingly, the trial court did not err in granting summary judgment on these claims, and we overrule Pool's first issue.

### D. Texas Property & Casualty Insurance Guaranty Act

■■■ In its second issue, Pool argues the trial court erred in granting Northfield's motion to dismiss Pool's claims because Abraxas failed to request that Northfield comply with the TPCIGA.[18] Pool argues that Abraxas's failure caused Pool to pay a debt that otherwise would be paid by Abraxas or Northfield; therefore, Pool claims it is entitled to legal indemnity[19] from Abraxas. Abraxas and North-

---

17. *See, e.g., Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex.2000) (stating that if a valid, express contract covers the subject matter of the parties' dispute, recovery under an equitable theory is inconsistent with the express agreement and thus, there can be no recovery under a quasi-contract theory).

18. TEX. INS.CODE art. 21.28–C.

19. Pool does not address its argument in relation to the elements of a common-law indem-

field argue that Pool has no private cause of action under the TPCIGA. We agree. In fact, Pool concedes as much; however, Pool argues that even if no private cause of action exists, (1) it is not attempting to bring an action under the TPCIGA, and (2) to enforce the legislative intent and framework of the TOAIA and the TPCI-GA, we must rule in its favor. Essentially, Pool argues that because the TPCIGA was intended to provide protection to those insured by impaired insurers, if it is required to fund the settlement this legislative intent is undermined. We decline to construe the TPCIGA in the manner suggested by Pool.

First, in its third-party petition, Pool did in fact assert a cause of action against Abraxas, alleging Abraxas had violated the TPCIGA. Second, examining the plain language of the TPCIGA, we find nothing that allows Pool to bring a cause of action against Abraxas under the circumstances of this case. Although Pool argues that the TPCIGA indicates an intent by the Legislature that Northfield be obligated for the $1,000,000 which Pool paid, assuming without deciding this was the Legislature's intent, there is nothing transforming this intent regarding Northfield into a private right of action against Abraxas.[20] By virtue of the Agreement, Pool agreed to indemnify Abraxas for the subject injuries. There is no language in the TPCIGA, nor in its purpose, that relieves Pool of its obligations as indemnitor under the cir-

cumstances of this case. Accordingly, we overrule Pool's second issue and affirm the trial court's judgment.

---

nity claim and therefore, we do not analyze the argument in light of those elements.

**20.** In the trial court, Pool claimed that both Abraxas and Northfield had violated the TPCIGA. On appeal, Pool does not assign any error to the court's dismissal of its counterclaims against Northfield and argues only that Abraxas had a duty to "protect" it under the TPCIGA. Thus, Pool waived any argument that Northfield is directly obligated to reimburse it by virtue of the TPCIGA. *See*

TEX.R.APP. P. 38.1; *Walden v. Affiliated Computer Servs., Inc.,* 97 S.W.3d 303, 324 (Tex. App.-Houston [14th Dist.] 2003, pet. denied); *see also Fields v. City of Tex. City,* 864 S.W.2d 66, 68 n. 1 (Tex.App.-Houston [14th Dist.] 1993, writ denied); *Young v. Hodde,* 682 S.W.2d 236, 237 (Tex.1984) (noting that a final judgment granting more relief than requested is not fundamental error and should be considered by an appellate court if presented as an issue on appeal).