Cause No









Cause No. 14-04-00708-CV Reversed and Remanded; Cause
No. 14-04-00845-CV Dismissed as Moot; and Majority and Dissenting Opinions
filed June 2, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00708-CV

____________

 

SANDHYA-RANI MOKKALA, M.D., JEFFREY D. CARTER, D.O., AND 

ARLINGTON ORTHOPEDIC ASSOCIATES, P.A., Appellants

 

V.

 

JAMES F.
MEAD, JR., AND DIANE P. MEAD, INDIVIDUALLY AND AS NEXT FRIENDS OF JAMES
FRANKLIN MEAD, III, ROBERT MEAD, AND 

THOMAS MEAD, MINORS, Appellees

____________________________________________________________________________________

 

On Appeal from the 333rd District Court

Harris County, Texas

Trial Court Cause No. 04-23671

____________________________________________________________________________________

 

NO. 14-04-00845-CV

____________

 

SANDHYA-RANI MOKKALA, M.D., Appellant

 

V.

 

JAMES F. MEAD, JR., AND
DIANE P. MEAD, INDIVIDUALLY AND AS NEXT FRIENDS OF JAMES FRANKLIN MEAD, III,
ROBERT MEAD, AND 

THOMAS MEAD, MINORS, Appellees

____________________________________________________________________________________

 

On Appeal from the 333rd District Court

Harris County, Texas

Trial Court Cause No.
03-64427

____________________________________________________________________________________

 








M A J O R
I T Y   O P I N I O N

In these consolidated
interlocutory appeals, we are called upon to construe section 74.351 (a) and
(b) of the Texas Civil Practice and Remedies Code, which pertains to the filing
of expert reports for health care liability claims.[1]  Appellants, healthcare providers, challenge the
trial court’s orders denying their motions to dismiss with prejudice their
health care liability claims under section 74.351, which provides in relevant
part:

(a) In a health care
liability claim, a claimant shall, not later than the 120th day after the date
the claim was filed, serve on each party or the party’s attorney one or more
expert reports, with a curriculum vitae of each expert listed in the report for
each physician or health care provider against whom a liability claim is
asserted.  The date for serving the
report may be extended by written agreement of the affected parties. . . .

(b) If, as to a defendant
physician or health care provider, an expert report has not been served within
the period specified by Subsection (a), the court, on the motion of the
affected physician or health care provider, shall, subject to Subsection (c),
enter an order that:

(1)  awards to the affected physician or health
care provider reasonable attorney’s fees and costs of court incurred by the
physician or health care provider; and

(2)  dismisses the claim with respect to the
physician or health care provider, with prejudice to the refiling of the claim.

 

Tex. Civ. Prac. & Rem. Code Ann. '
74.351(a)B(b) (Vernon 2005).








Here, it is
undisputed that appellees (“the Meads”) served their expert report and expert’s
curriculum vitae 121 and 122 days, respectively, after filing their original
petition against appellants, Sandhya-Rani Mokkala, M.D., Jeffrey D. Carter,
D.O., and Arlington Orthopedic Associates, P.A. (the “health care providers”)
and others, in trial court cause number 03-64427 (the “2003 case”).[2]  After twice nonsuiting their claims against
the health care providers in the 2003 case, the Meads then filed the same
claims against the health care providers in cause number 04-23671 (the “2004
case”).  We conclude the 120-day period
set forth in section 74.351(a) runs from the date the Meads filed the first
petition asserting their health care liability claim, a period which, in this
case, had expired before the Meads nonsuited their claims against the health
care providers.[3]  Therefore, we hold the trial court erred in
denying the health care providers’ motions to dismiss.  Accordingly, in the 2004 case, we reverse and
remand with directions to the trial court to award the health care providers
their reasonable attorney’s fees and costs of court and to render judgment
dismissing the Meads’ claims with prejudice. 
See id.  Presuming for the sake of argument
that we would otherwise have appellate jurisdiction over Dr. Mokkala’s appeal
regarding the 2003 case, we dismiss this appeal as moot because the Meads
nonsuited their claims in the 2003 case before the trial court denied Dr.
Mokkala’s motion to dismiss.[4]

I. 
Procedural Background

In
summary form, the following procedural events transpired in the two underlying
trial court cases:

 











 
 
  
 Date
 
 
  
                       2003 Case
 
 
  
                        2004 Case
 
 
 
 
  
 11-24-03
 
 
  
 The Meads file a petition claiming the health care providers were negligent
 in failing to diagnose cancer in appellee James Mead, Jr. 
 
 
  
  
 
 
 
 
  
 03-24-04
 
 
  
 The Meads serve their expert report.
 
 
  
  
 
 
 
 
  
 03-25-04
 
 
  
 The Meads serve the expert’s curriculum vitae.
 
 
  
  
 
 
 
 
  
 04-02-04
 
 
  
 The Meads file a motion to nonsuit the claims against the health care
 providers.
 
 
  
  
 
 
 
 
  
 04-07-04
 
 
  
 The trial court grants the motion to nonsuit.
 
 
  
  
 
 
 
 
  
 04-12-04
 
 
  
 The Meads amend their petition, again naming the health care
 providers as defendants.
 
 
  
  
 
 
 
 
  
 04-16-04
 
 
  
 Dr. Mokkala files a motion to dismiss based on the Meads’ untimely
 serving of the expert’s report and curriculum vitae.
 
 
  
  
 
 
 
 
  
 05-03-04
 
 
  
 The trial court again grants a motion by the Meads to nonsuit their claims
 against the health care providers.[5]
 
 
  
  
 
 
 
 
  
 05-06-04
 
 
  
  
 
 
  
 The Meads file a petition claiming appellants were negligent in
 failing to diagnose cancer in appellee James Mead, Jr.
 
 
 
 
  
 06-07-04
 
 
  
  
 
 
  
 Based on the Meads’ alleged untimely serving and inadequacy of the
 expert’s report, Dr. Carter files a motion to dismiss and requests attorney’s
 fees.[6]
 
 
 
 
  
 06-11-04
 
 
  
 The trial court orally denies Dr. Mokkala’s motion to dismiss.
 
 
  
  
 
 
 
 
  
 06-30B04
 
 
  
 The trial court signs an order denying Dr. Mokkala’s motion to
 dismiss, but the order is filed with the 2004 cause number.
 
 
  
  
 
 
 
 
  
 07-06-04
 
 
  
  
 
 
  
 Based on the Meads’ untimely serving of the expert’s report and curriculum
 vitae, Dr. Mokkala files a motion to dismiss and requests attorney’s fees.
 
 
 
 
  
 07-19-04
 
 
  
 The
 trial court signs orders denying motions to dismiss in both cases.
 
 
 
 
  
 07-22-04
 
 
  
 Dr. Mokkala files a notice of appeal.
 
 
  
 Dr. Mokkala files a notice of appeal.
 
 
 
 
  
 08-06-04
 
 
  
  
 
 
  
 Dr. Carter and Arlington Orthopedic Associates file a notice of
 appeal.
 
 




 

II. 
Discussion

A.        Issue Presented and Standard of Review








In a single
issue, the health care providers argue the trial court abused its discretion or
otherwise erred in denying their motions to dismiss the Meads’ claims with
prejudice because the Meads failed to timely serve their expert report and the
expert’s curriculum vitae.  They argue
that the 120-day time period under Section 74.351(a) began when the Meads filed
their “claim” in the 2003 case, and it was not affected by their nonsuit in
that case or their refiling of the same claims in the 2004 case.

The Meads
contend they have an absolute right to nonsuit under Texas Civil Procedure Rule
162 and, under the current statutes and case law, the health care providers
were required to move for dismissal before the Meads filed their nonsuit.  The Meads assert that by nonsuiting their
claims, they were then placed in the same position they would have been had
they not brought the 2003 case, i.e., the deadline for serving their
expert report was 120 days from the date they filed the 2004 lawsuit.

We apply
an abuse-of-discretion standard in reviewing a trial court’s decision on a
motion to dismiss in which a defendant claims the expert opinion was untimely
served.  See Pfeiffer v. Jacobs,
29 S.W.3d 193, 195B96 (Tex.
App.CHouston [14th
Dist.] 2000, pet. denied) (applying abuse-of-discretion standard to dismissal
under sections 13.01(d)B(g) of
former article 4590i).[7]  An abuse of discretion occurs when a trial
court acts in an unreasonable and arbitrary manner, or when it acts without
reference to any guiding principles.  Rittmer
v. Garza, 65 S.W.3d 718, 721B22 (Tex.
App.CHouston
[14th Dist.] 2001, no pet.).  We defer to
the trial court’s factual determinations, but review questions of law de
novo.  Id. at 722.  To the extent resolution of the issue before
the trial court requires interpretation of the statute itself, we apply a de
novo standard.  Buck v. Blum, 130
S.W.3d 285, 290 (Tex. App.CHouston
[14th Dist.] 2004, no pet.).

B.        Interpretation of Texas Civil Practice
and Remedies Code Section 74.351








In this
case, the Meads (1) filed a lawsuit alleging a health care liability claim
against health care providers and permitted the 120-day period for serving an
expert report to expire without serving the health care providers with the
report; (2) thereafter nonsuited the claim before, and again after, the health
care providers filed a motion to dismiss under subsection 74.351(b); and (3)
then filed a new lawsuit alleging the same health care liability claim.  Thus, the following question is before
us:  Under these circumstances, does the
120-day statutory period for filing the expert report run from the date the
second lawsuit is filed?  This question
requires us to construe the statute.

            1.         Legal standards.  In construing a statute, our objective is to
determine and give effect to the legislature’s intent.  City of San Antonio v. City of Boerne,
111 S.W.3d 22, 25 (Tex. 2003); Nabors Corp. Servs., Inc. v. Northfield Ins.
Co., 132 S.W.3d 90, 96 (Tex. App.CHouston
[14th Dist.] 2004, no pet.).  We look
first to the “plain and common meaning of the statute’s words,” presuming the
legislature intended the plain meaning of those words. Nabors Corp. Servs.,
132 S.W.3d at 96.  We also determine
legislative intent from the entire act, not just isolated portions, and read
the statute as a whole, interpreting it so that every part is given
effect.  Id.

In
addition, the Code Construction Act applies to section 74.351.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 1.002
(Vernon 2002) (stating, unless otherwise expressly provided by the Civil
Practice and Remedies Code, the Code Construction Act applies to the
construction of each provision in the code). 
Under the Code Construction Act, even if a statute is unambiguous on its
face, we may consider matters including (1) the object the legislature sought
to obtain; (2) the circumstances under which the legislature enacted the
statute; (3) the legislative history; (4) common law or former statutory
provisions, including laws on the same or similar subjects; and (5) the
consequences of a particular construction. 
See Tex. Gov’t Code Ann.
' 311.023
(Vernon 2005).








2.         Statutory language.  Section 74.351(a) provides:  “In a health care liability claim, a claimant
shall, not later than the 120th day after the date the claim was
filed, serve . . . one or more expert reports . . . for each
physician or health care provider against whom a liability claim
is asserted.”  Tex. Civ. Prac. & Rem. Code Ann. '
74.351(a) (emphasis added).  “Claim” in
section 74.351 “means a health care liability claim.”  Id. '
74.351(r)(2).  A “health care liability
claim” is a “cause of action,” not a lawsuit. 
See id.  '
74.001(a)(13).[8]
Thus, under the plain language of section 74.351(a), the 120-day period is triggered
on the date the claimant files a petition alleging a particular health care
liability claim, not the date she files another lawsuit asserting that same
claim.

            Our
interpretation is consistent with that of the Dallas Court of Appeals in Puls
v. Columbia Hospital at Medical City Dallas Subsidiary, L.P., 92 S.W.3d
613, 617B18 (Tex.
App.CDallas
2002, pet. denied).[9]  In Puls, the appellants initially
asserted a claim against a hospital, Medical City, based on its vicarious
liability for the alleged negligence of perfusionists (technicians specialized
in management of a heart-lung machine) during the decedent’s coronary artery
bypass surgery.  Id. at 615.  The appellants subsequently amended their
petition to assert the hospital’s vicarious liability for the alleged negligent
conduct of nurses providing post-operative care.








The expert report criticizing the
nurses’ conduct was served within the statutory deadline of the amended
petition, but not the original petition. 
On appeal, the court rejected Medical City’s contention the deadline was
to be measured from the date the claimants filed their original suit against
Medical City, in which they alleged the hospital’s liability based on the
perfusionists’ conduct.  The Puls
court explained:

Here, appellants’ lawsuit against Medical City was
initiated with a single health care liability claim asserted in the original
petition filed August 8, 2000.  That
claim alleged that Medical City was vicariously liable for the perfusionists’
actions during surgery.  Section 13.01(d)
states that an expert report is due A[n]ot
later than the later of the 180th day after the date on which a health care
liability claim is filed. . . .”  Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 13.01(d) (emphasis added).  Pursuant to section 13.01(d), an expert
report regarding the standard of care applicable to a perfusionist’s acts
during surgery was due 180 days after that claim was filed.

Medical City’s interpretation of the above phrase would
require a plaintiff to furnish an expert report 180 days after suit is
filed, but section 13.01(d) plainly and unambiguously says claim, not suit.  A health care liability claim is “a cause of
action against a health care provider . . . for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care or health
care or safety.”  Id. ' 1.03(a)(4). 
That is, it is a theory of a health care provider’s liability.  Here, appellants pleaded two claims, alleging
that Medical City was vicariously liable for the perfusionists’ conduct during
surgery and for the nurses’ post-operative actions.  Section 13.01(d) requires experts’ opinions
as to the standards of care applicable to each claim. . . .  By amending its petition on May 15, 2001,
appellants alleged, for the first time, a health care liability claim against
Medical City for vicarious liability arising from the nurses’ alleged post‑operative
actions.  According to the plain meaning
of section 13.01(d), filing a claim arising from the nurses’ negligence began
the period for timely furnishing an expert report as to that claim.  Nothing in the statute distinguishes between
claims for direct and vicarious liability. 
Thus, the amendment of a petition to add a new claim constitutes filing
of that claim pursuant to section 13.01(d) and triggers the expert report
deadline as to any defendant sued in either a direct or vicarious capacity.

 








Id. at 617B18.  Furthermore, if the legislature had intended
to set the 120-day time limit in relation to the date a claimant files a
lawsuit, it could have done so, as it did in section 74.051, which provides:

Any person . . . asserting
a health care liability claim shall give written notice of such claim . . . to
each physician or health care provider against whom such claim is being made at
least 60 days before the filing of a suit in any court of this state
based upon a health care liability claim.

 

Tex. Civ. Prac. &
Rem. Code Ann. ' 74.051(a) (Vernon 2005)
(emphasis added). 

3.         Purported conflict with Texas Civil Procedure Rule 162.  The Meads, however, contend they had an
absolute right to nonsuit their claims under Rule 162, and that the health care
providers were required to move for dismissal before the Meads filed their
nonsuit.  Having nonsuited their claims,
the Meads assert they effectively occupied the same position had they not
brought the 2003 case; that is, their deadline for serving their expert report
was 120 days from the date they filed the 2004 case.

Rule 162 provides in relevant
part:  “At any time before the plaintiff
has introduced all of his evidence other than rebuttal evidence, the plaintiff
may dismiss a case, or take a non-suit, which shall be entered in the minutes.”  Tex.
R. Civ. P. 162.  A plaintiff’s right
to take a nonsuit is unqualified and absolute so long as the defendant has not
made a claim for affirmative relief or a motion for sanctions.  BHP Petroleum Co. v. Millard, 800
S.W.2d 838, 840 (Tex. 1990).  Nothing in our
interpretation of Civil Practice and Remedies Code section 74.351 interferes
with a plaintiff’s right to take a nonsuit.[10]








Although under our interpretation
of section 74.351(a) the plaintiff is arguably not placed in the “same
position” she was before she brought the action, at least not in relation to
the amount of time she has to serve the section 74.351 expert report, our
interpretation does not conflict with the purpose of Rule 162.[11]  See Alvarado v. Hyundai Motor Co., 885
S.W.2d 167, 170 (Tex. App.CSan
Antonio 1994) (noting Rule 162 is designed to allow a plaintiff to avoid
unexpected emergencies, citing 5 Roy W.
McDonald, Texas Civil Practice ' 27:39
(John S. Covell ed., 1992)), rev’d on other grounds, 892 S.W.2d 853
(Tex. 1995); see also Hoodless v. Winter, 80 Tex. 638, 641, 16 S.W. 427,
428 (1891) (“Owing to unexpected contingencies that may occur during a
trial, [a plaintiff’s right to take a nonsuit] is a privilege which it may
become necessary for the most careful and diligent litigant to exercise, and it
is important that the substance, and not the shadow alone, of the right shall
be preserved.”).  The plaintiff controls
when she files a petition alleging a health care liability claim, thereby
triggering the commencement of the 120-period within which she must serve the
expert report.  Subject only to the
statute of limitations, a plaintiff can therefore wait to file a petition until
she has obtained, and can serve, the expert report.  Thus, our holding that refiling a previously
nonsuited health care liability claim fails to restart the 120-day period, does
not conflict with the purpose of Rule 162, i.e., allowing a means to
discontinue the suit in the event of unexpected contingencies.








Moreover, even if there were a
conflict between section 74.351(a) and Rule 162, the legislature has determined
section 74.351(a) prevails:  “In the
event of a conflict between this chapter and another law, including a rule of
procedure or evidence or court rule, this chapter controls to the extent of the
conflict.”  Tex. Civ. Prac. & Rem. Code Ann. '
74.002(a) (Vernon 2005).  As Justice Owen
has observed, it was the legislature’s “clear determination that law that
applies in other lawsuits is inadequate in some respects for health care
liability claims.”  In re Woman’s
Hosp. of Tex., Inc., 141 S.W.3d 144, 147 (Tex. 2004) (Owen, J.,
dissenting).

4.         Legislative background of section 74.351.  To interpret section 74.351 as permitting the
120-day period to recommence on the refiling of a previously nonsuited claim
would not only be inconsistent with the plain language of the statute, but also
with the circumstances under which the legislature enacted the statute, the
object the legislature sought to obtain, and the legislative history of chapter
74 of the Civil Practices and Remedies Code.

In enacting chapter 74, the
legislature was concerned with the frequency and costs of health care liability
claims.  Act of June 2, 2003, 78th Leg., R.S. ch. 204, ' 10.11(a), 2003 Tex. Gen. Laws 847,
884.[12]  Two purposes of chapter 74 are to: “(1) reduce
excessive frequency and severity of health care liability claims through
reasonable improvements and modifications in the Texas insurance, tort, and
medical practice systems;” and “(2) decrease the cost of those claims and
ensure that awards are rationally related to actual damages.”  Id. ' 10.11(b).  In presenting House Bill 4, Representative
Joe Nixon, Chair of the House Committee on Civil Practices explained:

House Bill 4 . . . is a
comprehensive civil justice reform bill intended to address and correct a
serious problems [sic] in our courts system. 
It is designed to promote fairness and efficiency in civil lawsuits,
protect Texas citizens and Texas courts from abusive litigation tactics, remove
incentives in the system that are causing unwarranted delay and expense.  House Bill 4 B
it’s purpose
is to restore the needed balance in our court system so that it can operate
more efficiently and more fairly and less costly.








 

Hearings on Tex. H.B. 4 Before the House Comm. on
Civil Practices, 78th Leg., R.S. 1 (Feb. 26, 2003) (statement of
Rep. Nixon) (transcript available from Capitol Research Services, Austin,
Texas).  Representative Nixon
subsequently stated, “[T]he hard reality is we just need to make a hard and
fast deadline, like we do on statue [sic] of limitations B as we do
on other requirements.”  Debate on Tex.
H.B. 4 on the Floor of the House, 78th Leg., R.S. 317 (Mar. 19, 2003)
(statement of Rep. Nixon) (transcript available from Capitol Research Services,
Austin, Texas).  He agreed that, if House
Bill 4 were passed, it meant that, if an attorney missed the deadline for
“filing [sic]” the expert report, the plaintiff would be barred from prosecuting
that claim.  Id. 

Although he had other objections
to the expert-report provisions in House Bill 4, attorney Jim M. Perdue, Jr.,
explained the advantages of a firm expert-report deadline to the Senate State
Affairs Committee:

It seems to me that one of the primary ways
to deal with an issue of increased filings of frivolous lawsuits and the
defense costs that those create would be to get nonmeritorious cases out of the
system as early as possible and as easy as possible. . . .  The expert report section . . . of 4590i is
something that can be dealt with and should be dealt with to accelerate the
disposition of a nonmeritorious case. 
And as a plaintiff’s lawyer that screens and takes one out of about 250
cases that come to our firm, if we could figure out a way to get out of the
system a case that is decided by the judge to not have expert support within
the first 180 days it’s on file, those defense costs will now, not be
incurred.  The heartache and expense of
doctors who have been sued that cannot be supported will not be suffered.

.
. .








On the increased number of cases that are
being dismissed within the first 180 days because of the failure of an expert
report.  If there was a way to make the
180-day requirement firm, solid and clear and the expert report requirement
then on file, and not allow venue shopping where you have judges who arent’
[sic] dismissing it, that is something that will stick.  I, I will suggest to the Committee that when
the 2002 data comes out you’re going to see that, an increased number of
medical malpractice cases have been successfully dismissed and, and those
defense costs now have not been incurred and that nonmeritorious case, that is
an expert cannot support the case, you get the case out of the system. That is
a valid goal that is a way to achieve a real result on the front end. . .
.  I think it’s dangerous to take out the
attorney’s ability to extend it, especially if you’re gonna make it a firm
90-day, nonnegotiable, dismiss with an interlocutory appeal that is set up such
that the defense lawyer can hide all discovery, or stop all discovery and you
cannot go forward.  What I think the more
reasonable approach would be is, have an exBan absolute expert report
requirement within 180 days.  Have a mean
[sic] for attorneys to extend that if necessary.

Hearings on Tex. H.B. 4 Before the Senate State
Affairs Comm., 78 Leg., R.S. 19B20 (April
16, 2003, tape 2) (statement of Jim M. Perdue, Jr.) (transcript available from
Senate Staff Services Office).[13]








Against this backdrop, in
enacting section 74.351, the legislature made significant changes to the former
expert-report procedure for health care liability claims.  The legislature removed the provisions
allowing a cost bond or cash deposit in lieu of an expert report served 90 days
after a plaintiff filed a health care liability claim and removed the
provisions permitting a nonsuit if an expert report was not filed 180 days
after the plaintiff filed the claim.  See Act of May 5, 1995, 74th Leg., R.S., ch. 140, ' 1, sec. 13.01(a), (d), 1995 Tex.
Gen. Laws 985, 985, 986 (repealed 2003). 
Cf. Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351 (Vernon 2005).[14]  The legislature also removed former
subsections (f) and (g), which provided a 30-day extension and a grace period,
respectively, if a plaintiff failed to timely comply with the 180-day
requirement.  See Act of May 5,
1995, 74th Leg., R.S., ch. 140,  ' 1, sec.
13.01(f), (g), 1995 Tex. Gen. Laws 985, 986 (repealed 2003).  Cf. Tex.
Civ. Prac. & Rem. Code Ann. '
74.351.  Under the present statute, the
only means for a plaintiff to extend the 120-day deadline for serving an expert
report is by agreement of the affected parties. 
See Tex. Civ. Prac. &
Rem. Code Ann. '
74.351(a).

Allowing a plaintiff to restart
the period for serving an expert report by simply nonsuiting her health care
liability claim and refiling that same claim, could effectively expand the
120-day period to well over two years.  See
id. ''
74.051(c), 74.251(a), 74.351(a) (tolling statute of limitations for period of
75 days after notice is given, setting forth two-year statute of limitations,
and setting 120-day deadline for expert report).  Such a procedure is inconsistent with the
policies, goals, and statutory provisions set forth above.

III. 
Conclusion

Under section 74.351(a), absent
an agreement by the affected parties, the Meads were required to serve their
expert report by March 23, 2004.  See Tex. Civ. Prac. & Rem. Code Ann. '
74.351(a).  The record is devoid of any
agreement, and it is undisputed the Meads served their report on March 24,
2004.  Under section 74.351(b), on the
health care providers’ motions, the trial court was required to enter an order
dismissing the claims against the health care providers with prejudice to
refiling the claim.  See id. '
74.351(b).  Accordingly, we hold the
trial court erred in denying the health care providers’ motions.








Although the Meads missed the
120-day deadline by only one day, we are bound by the express provisions of the
statute.  It is the province of the
legislatureCnot this courtCto
provide for extensions or grace periods regarding this deadline.

Because the Meads were not
entitled to more than 120 days under the statute, their reports were untimely,
and the trial court should have dismissed their claims.  Accordingly, in cause number 14-04-00708-CV,
we reverse the order of the trial court and remand with directions to the trial
court to award the health care providers their reasonable attorney’s fees and
costs of court and to render judgment dismissing with prejudice the Meads’
claims against the health care providers. 
Presuming for the sake of argument that we would otherwise have
appellate jurisdiction over Dr. Mokkala’s appeal in cause number 14-04-00845-CV, we dismiss
this appeal as moot because
the Meads nonsuited their claims in the 2003 case before the trial court denied
Dr. Mokkala’s motion to dismiss.

 

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Majority and Dissenting Opinions filed June 2, 2005.

Panel consists
of Justices Edelman, Seymore, and Guzman. 
(Seymore, J., dissenting.)

 

 











[1]  In 2003, the
Texas Legislature repealed article 4590i of the Revised Civil Statutes and
moved substantially amended provisions of former article 4590i to Chapter 74 of
the Civil Practice & Remedies Code.  See
Act of June 2, 2003, 78th Leg., R.S., ch. 204, '' 10.01, 10.09, 2003 Tex. Gen. Laws 847, 864B82, 884.  This
legislation also added the interlocutory appeal statute that provides appellate
jurisdiction in the present case.  See
id. ' 1.03, 2003 Tex. Gen. Laws 847, 849 (codified at Tex. Civ. Prac. & Rem. Code ' 51.014(a)(9) (Vernon Supp. 2004B05)).

 





[2]  The Meads
named several other defendants who are not parties to this interlocutory
appeal.





[3]  Thus, the
120-day period expired before the Meads nonsuited their claims against the
health care providers.  We therefore need
not decide whether filing of a nonsuit before the expiration of the 120-day
period would toll the 120 days for the period that elapses between the filing
of the nonsuit and the refiling of the same health care liability claim.





[4]  See McNeill
v. Hubert, 119 Tex. 18, 22, 23 S.W.2d 331, 332B33 (Tex. 1930) (indicating plaintiff’s nonsuit of his
claim, when defendant had not filed a claim for affirmative relief, necessarily
rendered any questions involved in appeal moot, because there was nothing upon
which the judgment of the appellate court could effectively operate).





[5]  This motion is
not part of the appellate record.





[6]  There is no
indication in the appellate record of whether or when the Meads served the
expert’s report and curriculum vitae in the 2004 case.





[7]  See Act
of May 25, 1993, 73rd Leg., R.S., ch. 625, ' 3, 1993
Tex. Gen. Laws 2347, 2347B49, amended by Act of May 5, 1995, 74th Leg.,
R.S., ch. 140,  ' 1, 1995 Tex. Gen. Laws 985, 985B87, repealed by Act of June 2, 2003, 78th Leg.,
R.S. ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884.





[8]  Section
74.001(a)(13) provides:

 

“Health care liability claim” means a cause of action
against a health care provider or physician for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care, or health
care, or safety or professional or administrative services directly related to
health care, which proximately results in injury to or death of a claimant,
whether the claimant’s claim or cause of action sounds in tort or contract.

 

Tex. Civ. Prac. & Rem.
Code Ann. '
74.001(a)(13) (Vernon 2005).





[9]  The Puls
court was construing former article 4590i. 
See Puls v. Columbia Hosp. at Med. City Dallas Subsidiary,
L.P., 92 S.W.3d 613, 617B18 (Tex. App.CDallas
2002, pet. denied).  Nevertheless, the
specific language the Puls court was interpreting and the definition of
“health care liability claim” on which it relied are in all material respects
identical to those found in the present statute.  See Act of May 5, 1995, 74th Leg.,
R.S., ch. 140, ' 1, 1995 Tex. Gen. Laws 985, 986 (setting forth
expert-report procedure), repealed by Act of June 2, 2003, 78th Leg.,
R.S. ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884; Act of May 30,
1977, 65th Leg., R.S, ch. 817, ' 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041 (defining
“health care liability claim”), repealed by Act of June 2, 2003, 78th
Leg., R.S. ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884.





[10]  Thus, contrary
to the dissent’s suggestion, we do not conclude “the legislature intended to
preclude litigants from exercising the right to file a non-suit without
prejudice as prescribed by Rule 162 when it enacted House Bill 4.”  Slip op. at 4 (Seymore, J., dissenting).  A plaintiff still has, pursuant to the
exceptions set forth in Rule 162, an absolute right to a nonsuit.  See 
Tex. R. Civ. P. 162.

 

We note, however, that the legislature
removed provisions of the prior statute permitting a plaintiff to nonsuit an
action if the plaintiff failed to furnish an expert report within the required
time.  See Act of May 5, 1995,
74th Leg., R.S., ch. 140,  ' 1, sec. 13.01(d)(2), (n), 1995 Tex. Gen. Laws 985,
986, 987 (repealed 2003).  Cf.  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351
(Vernon 2005).  We do, therefore,
conclude the legislature intended that a nonsuit would not provide plaintiffs
with a new 120-day period within which to file their expert report.  In short, like the expiration of a
limitations period, expiration of the 120-day period for filing an expert
report cannot be cancelled by a nonsuit.





[11]  Cf. Crofts
v. Court of Civil Appeals, 362 S.W.2d 101, 104 (Tex. 1962) (stating
dismissal is in no way an adjudication of rights of the parties, but merely
places parties in position they were in before court’s jurisdiction was invoked
just as if suit had never been brought).





[12]  The
legislature specifically found: “(1) the number of health care liability claims
(frequency) has increased since 1995 inordinately;” and “(2) the filing of
legitimate health care liability claims in Texas is a contributing factor
affecting medical professional liability rates.”  Act of June 2, 2003, 78th Leg., R.S. ch. 204,
' 10.11(a), 2003 Tex. Gen. Laws 847, 884.





[13]  The senate
committee version of House Bill 4 reflected some of the concerns expressed by
those who had testified before the Senate State Affairs Committee.  In contrast to House Bill 4, which set a
90-day deadline for the report, the senate committee version set a 150-day
deadline.  See Conference Committee Report on H.B. 4, Section
by Section Analysis, 78th Leg., R.S. 209 [79].  Unlike House Bill 4, the senate committee
version permitted the affected parties to extend the deadline and required
objections to the sufficiency of the report to be filed within 21 days of
service of the report.  Id. at 210
[80].  The senate version also allowed
more deposition discovery before the expert report is served.  Id. at 215 [85].





[14]  In support of
its position that a health care liability claimant who files a non-suit without
prejudice should be returned to status quo ante without prejudice to initiating
another suit, the dissent cites Martinez v. Lakshmikanth, 1 S.W.3d 144
(Tex. App.CCorpus Christi 1999, pet. denied).  Slip op. at 4 (Seymore, J., dissenting).  In Martinez, the court rejected the
health care providers’ argument that provisions in the predecessor statute
expressly limited a plaintiff’s right to non‑suit and “‘13.01(d)(2)
limit[ed] the right by preventing a post‑180 day non‑suit from
interfering with the consequences of a claimant’s failure to furnish the
required expert report, and 13.01(n) limits the right by creating an exception
to the rule that the effect of a non‑suit is to render a case as if it
had never been filed.’”  Martinez,
1 S.W.3d at 148.  Observing that the
legislature, in enacting House Bill 4, did not address Rule 162, the dissent
suggests Martinez is still good law. 
Slip op. at 4 (Seymore, J., dissenting). 
The court in Martinez, however, was considering a statutory
structure containing specific provisions for nonsuitsCprovisions the legislature removed in 2003.  See Martinez, 1 S.W.3d at 147B49.  Cf. Tex. Civ. Prac. & Rem. Code Ann. ' 74.351 (Vernon 2005). 
Because the legislature removed the provisions in the predecessor
statute referring to nonsuits, there was arguably no need for the legislature
separately to address Rule 162.