**RELIANCE INSURANCE COMPANY (In Liquidation) and Texas Property and Casualty Insurance Guaranty Association, Appellants,**

v.

**John Lyle HIBDON a/k/a J.L. Hibdon, Appellee.**

No. 14–09–00092–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 20, 2011.

Loren R. Smith, Houston, for appellants.

Jeffrey Stewart Davis, Mike Seely, Houston, for appellee.

Panel consists of Justices SEYMORE and BROWN.*

## SUBSTITUTE OPINION
## ON REHEARING

CHARLES W. SEYMORE, Justice.

We overrule appellants' motion for rehearing, but withdraw our opinion issued on October 21, 2010 and issue this substitute opinion to further explain our disposition of this appeal.

---

* Justice Yates participated during oral argument and in the original opinion. However, she did not participate in the disposition of appellant's motion for rehearing. *See* Tex.

R.App. P. 41.1(b) ("After argument, if for any reason a member of the panel cannot participate in deciding a case, the case may be decided by the two remaining justices.").

Reliance Insurance Company (in liquidation) ("Reliance") and Texas Property and Casualty Insurance Guaranty Association ("TPCIGA") (collectively, "appellants") sued John Lyle Hibdon a/k/a J.L. Hibdon, claiming that Hibdon interfered with appellants' statutorily-prescribed rights to recover workers' compensation payments by engaging in conversion, conspiracy, and unjust enrichment. All parties filed traditional and no-evidence motions for summary judgment. The trial court denied appellants' motion and granted summary judgment in favor of Hibdon.

In issues one through three, appellants contend the trial court erred by denying their motion for summary judgment and by granting Hibdon's motion based on his waiver of subrogation defense. In issue four, appellants contend the trial court erred by granting Hibdon's traditional motion for summary judgment based on his contention that no sums were owed to appellants; appellants argue they have a right to priority payment even though they have been reimbursed. In issue five, appellants contend the trial court erred by granting Hibdon's no-evidence motion for summary judgment based on his contention there is no evidence Reliance paid benefits to the workers' compensation claimant. In issue six, appellants contend the trial court erred by denying their motion for summary judgment because appellants conclusively proved their causes of action and the amount of their subrogation lien. In issue seven, appellants contend the trial court erred by denying their motion for summary judgment because they conclusively proved TPCIGA's statutory lien. Finally, in issue eight, appellants contend the trial court erred if it considered Hibdon's late-filed "election of remedies" and "one satisfaction rule" defenses.

We affirm the portions of the trial court's orders denying appellants' motion for summary judgment and granting Hibdon's motion for summary judgment relative to TPCIGA's claims. However, we reverse that portion of the trial court's order granting Hibdon's motion for summary judgment relative to Reliance's claims and remand for proceedings consistent with this opinion.

## I. BACKGROUND

The significant facts are undisputed. RME Petroleum Company ("RME") contracted with Grey Wolf Drilling Company, L.P. ("Grey Wolf") to drill a well ("RME/Grey Wolf contract"). Hibdon was employed by RME. The RME/Grey Wolf contract required Grey Wolf to maintain certain insurance policies with RME named as an additional insured. The contract also obligated Grey Wolf to secure a waiver of subrogation in favor of RME but did not specify whether RME's employees were to be included in the waiver.

Grey Wolf purchased a workers' compensation policy with a $250,000 deductible from Reliance ("Reliance policy"). In the Reliance policy, Reliance agreed that it would not enforce its right to subrogation against "[a]ny person or organization" in whose favor Grey Wolf was required by written contract to obtain a waiver of subrogation. Cunningham Lindsey was retained to administer employee injury claims under the Reliance policy.

In March 2000, Grey Wolf's employee, Lee Valentine, was injured in the course and scope of his employment. Cunningham Lindsey paid $243,397 in workers' compensation benefits to Valentine. Reliance then went into receivership and TPCIGA[1] assumed payment of workers'

---

1. "[TPCIGA] is a nonprofit, unincorporated legal entity composed of all member insurers, who must be members of [TPCIGA] as a condition of their authority to transact insurance

compensation benefits to Valentine.[2] From December 2002 through January 2005, TPCIGA paid Valentine $96,602.70. The parties agree that Grey Wolf reimbursed $243,397 to Cunningham Lindsey and $96,602.70 to TPCIGA.

Valentine filed a third-party action against RME and Hibdon. Pursuant to an indemnification agreement in the RME/ Grey Wolf contract, Grey Wolf's insurance carrier, Lexington Insurance Company ("Lexington") agreed to defend RME and Hibdon. On December 7, 2004, Hibdon, by and through Lexington's claims personnel, settled with Valentine for $350,000. On January 21, 2005, Lexington sent a check for $350,000 to Valentine.

Notwithstanding the fact that they had been fully reimbursed, appellants sued Hibdon, contending he was obligated by statute to pay them before paying Valentine. Appellants later filed a traditional and no-evidence motion for summary judgment in which they presented evidence and argument that they are entitled to priority in payment from Valentine's settlement with Hibdon. Hibdon responded and filed his own traditional and no-evidence motion for summary judgment asserting multiple grounds for disposition of appellants' claims. The trial court denied appellants' motion and granted Hibdon's motion without specifying the grounds on which judgment was granted.

## II. SUMMARY JUDGMENT

The parties filed both traditional and no-evidence motions for summary judgment.

We review *de novo* the trial court's summary judgment. *Provident Life & Acc. Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). Issues not expressly presented to the trial court by written motion for summary judgment cannot be considered as grounds to affirm or reverse the trial court's judgment. Tex.R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). "A motion must stand or fall on the grounds expressly presented in the motion." *McConnell,* 858 S.W.2d at 341.

Under the traditional summary-judgment standard of review, a movant has the burden to demonstrate there are no genuine issues of material fact and he is entitled to judgment as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). In determining whether there is a genuine fact issue, evidence favorable to the non-movant is taken as true and all reasonable inferences are made in his favor. *Id.* A movant is entitled to summary judgment only if he conclusively proves all essential elements of his claim. *Johnston v. Crook,* 93 S.W.3d 263, 273 (Tex.App.-Houston [14th Dist.] 2002, pet. denied).

In a no-evidence motion for summary judgment, the movant must specifically identify the elements for which there is no evidence. *Walker v. Thomasson Lumber Co.,* 203 S.W.3d 470, 473–74 (Tex.App.-Houston [14th Dist.] 2006, no pet.). The trial court must grant the motion unless the respondent presents evidence raising a genuine issue of material fact. Tex.R. Civ.

---

in the state of Texas.... [TPCIGA] stands in the place of a member insurer when such insurer is impaired ... to the extent of its obligation for covered policy claims unpaid by the impaired insurer...." *Tex. Prop. & Cas. Ins. Guar. Ass'n v. De Los Santos,* 47 S.W.3d 584, 585 n. 1 (Tex.App.-Corpus Christi 2001, no pet.).

2. The record reflects that Cunningham Lindsey continued to make payments within the self-insured deductible to Valentine during the period from Reliance's entry into receivership until TPCIGA began making payments. There is apparently no dispute regarding these payments.

P. 166a(i). However, the respondent is "'not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements.'" *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex.2008) (quoting Tex.R. Civ. P. 166a(i) cmt. (1997)).

When both parties move for summary judgment and the trial court grants one motion and denies the other, we review summary-judgment evidence from both parties and determine all questions presented. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). We must render the judgment that the trial court should have rendered. *Id.* When a trial court does not specify the grounds for granting summary judgment, we must affirm the judgment if any summary-judgment ground is meritorious. *Id.*

### III. WAIVER OF SUBROGATION

In their first three issues, appellants contend the trial court erred by granting Hibdon's motion for summary judgment based on his waiver of subrogation defense. Our analysis of these issues requires interpretation of the relevant contracts.

### A. Rules for Contract Construction

When interpreting a contract, we must ascertain and give effect to the contracting parties' intent. *Perry Homes v. Cull*, 258 S.W.3d 580, 606 (Tex.2008). We focus on the language used in the contract because it is the best indication of the parties' intent. *Id.* We must examine the entire contract in an effort to harmonize and effectuate all of its provisions so that none are rendered meaningless. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006). Therefore, we will not give controlling effect to any single provision; instead, we read all of the provisions in light of the entire

agreement. *Id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983)). We may not rewrite the contract or add to its language under the guise of interpretation. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 161–62 (Tex.2003). Rather, we must enforce the contract as written. *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex.1965). If possible, we should avoid a construction that is unreasonable, oppressive, inequitable, or absurd. *Pavecon, Inc. v. R–Com, Inc.*, 159 S.W.3d 219, 222 (Tex.App.-Fort Worth 2005, no pet.). Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex.1987).

A court may determine that a contract is ambiguous even if neither party makes the claim. *In re Sterling Chems., Inc.*, 261 S.W.3d 805, 809 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding) (citing *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex.1993)). However, a mere disagreement about interpretation does not render a contract ambiguous. *See id.* at 808. Instead, a contract is ambiguous if it is susceptible to more than one reasonable interpretation. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). By contrast, a contract that may be given a definite or certain meaning is not ambiguous and will be construed as a matter of law. *See id.* Determining whether contract language is ambiguous presents a question of law for the court. *See id.*

### B. RME/Grey Wolf Contract

In their first issue, appellants argue that the waiver of subrogation provision is inapplicable because it does not apply to Hibdon. The parties agree that a provision in the RME/Grey Wolf contract

required Grey Wolf to maintain certain types of insurance coverage during the pendency of the agreement. The provision required Grey Wolf to name RME as an additional insured on these policies and to procure a waiver of subrogation in RME's favor:

11.3 Contractor [Grey Wolf] shall maintain in full force and effect during the term of this agreement insurance coverages of the types and in the minimum amounts set forth below:

(a) Workmen's Compensation Insurance in full compliance with the laws of the state wherein operations are performed. . . .

. . .

. . . . . Operator [RME] and its non-operating Interest Holders shall be named as additional insureds in each of such policies. *[A] "Waiver of Subrogation" in favor of Operator, its subsidiaries, affiliated companies and non-operating Interest Holders shall be added to all policies of insurance,* including Contractor's [Grey Wolf] property insurance covering Contractor's rig and equipment.

(emphasis added). Pursuant to the above provisions, Grey Wolf purchased the workers' compensation policy from Reliance. The Reliance policy contained the following relevant language:

We [Reliance] have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.

. . .

Schedule

. . .

Any person or organization from whom the Named Insured [Grey Wolf] has agreed by written contract to furnish this waiver.

Appellants argue that there is no waiver of subrogation in favor of Hibdon because the provision in the RME/Grey Wolf contract did not specifically mention *employees.* Appellants assert that language *was* used to include employees in a separate indemnity provision in the RME/Grey Wolf contract:

11.1 Each party hereto agrees to indemnify and hold the other party, its officers, *employees,* subsidiaries, affiliated companies and non-operating Interest Holders harmless from any and all losses, claims, actions, costs, expenses, judgments, subrogations or other damages resulting from injury . . . to any person (including, but not limited to, the parties hereto, *their respective employees,* representatives, agents, invitees and subcontractors) or damage to property of any person . . . arising out of the negligent act or willful misconduct of the indemnifying party, its employees, agents, contractors or invitees.

(emphasis added).

According to appellants, the absence of the term "employees" in the waiver-of-subrogation provision reflects the parties' intention that the waiver was to benefit RME, not individual employees.[3] Hibdon responds that inclusion of the term "employees" in the RME/Grey Wolf contract

---

**3.** Appellants seem to ignore the legal effect of Grey Wolf's indemnification agreement with RME and its employees. Pursuant to this agreement, Grey Wolf has no interest in pursuing reimbursement of sums paid in connection with Valentine's workers' compensation claim.

provision was unnecessary. Specifically, Hibdon relies on the following quote: "It is not necessary for a waiver of subrogation to name all of the employees of an employer when a carrier waives subrogation rights in favor of a company or companies contracting with the employer." *Am. Risk Funding Ins. Co. v. Lambert,* 59 S.W.3d 254, 258–59 (Tex.App.-Corpus Christi 2001, pet. denied) (*citing Lumbermens Mut. Cas. Co. v. Carter,* 934 S.W.2d 912 (Tex.App.-Beaumont 1996, no writ); *Nat'l Union Fire Ins. Co. v. Pennzoil,* 866 S.W.2d 248 (Tex.App.-Corpus Christi 1993, no writ)).

We do not find the court's analysis in *Lambert* persuasive. *Lambert* is factually distinguishable because the carrier asserted its subrogation rights against the injured employee of its insured, whereas Reliance asserts its rights against the negligent employee of the third-party company. Moreover, the cases cited in support of the opinion are not directly on point. *See Lumbermens,* 934 S.W.2d at 914 (concluding that parties intended to waive subrogation rights in favor of a specific company, even though they used the company's informal name in the waiver); *Pennzoil,* 866 S.W.2d at 251 (concluding that carrier could pursue subrogation rights against two companies not named in waiver).

The waiver requirement in the RME/Grey Wolf contract is straightforward: "[A] 'Waiver of Subrogation' in favor of Operator, its subsidiaries, affiliated companies and non-operating Interest Holders shall be added to all policies of insurance." Considering the contract as a whole, we conclude the language sub judice is unambiguous and construe the contract as written. *See Marshall,* 388 S.W.2d at 181. According to the plain meaning of the provision, RME and Grey Wolf intended for Grey Wolf's workers' compensation carrier to waive subrogation in RME's favor but did not intend for a similar waiver in Hibdon's favor. If the parties intended to provide a subrogation waiver in Hibdon's favor, they could have added the term "employees" to the provision.[4]

Because the provision does not include employees, liability insurance is not fully substituted for legal remedies such as subrogation in the underlying multi-contractor operation. *See, e.g., Trinity Universal Ins. Co. v. Bill Cox Constr., Inc.,* 75 S.W.3d 6, 13 (Tex.App.-San Antonio 2001, no pet.) (explaining the purpose of subrogation waiver is "to avoid litigation over claims for damages while also protecting the parties by 'in effect simply requir[ing] one of the parties to the contract to provide insurance for all of the parties.'" (quoting *S.S.D.W. Co. v. Brisk Waterproofing Co.,* 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d, 1097, 1103 (1990) (Alexander, J., dissenting))); *Lambert,* 59 S.W.3d at 257 ("Usually, it is easier to settle a personal injury lawsuit, when there are no subrogation rights to consider. In order to make third-party suits easier to settle, the employer pays the compensation carrier a premium to waive its subrogation rights. The carrier further benefits by not having to litigate its subrogation rights."). Nevertheless, we would impermissibly add language to the provision by interpreting it to include a waiver of subrogation in favor of RME's employees. *See Schaefer,* 124 S.W.3d at 161–62.[5]

---

**4.** Hibdon refers to the affidavit of a Grey Wolf officer who averred that Grey Wolf intended the waiver-of-subrogation provision to cover RME's employees. However, the record indicates that the trial court sustained appellants' objections to the affidavit, and, on appeal, Hibdon does not challenge the trial court's evidentiary ruling.

**5.** Hibdon also suggests appellants present inconsistent positions because they contend the

Accordingly, we sustain appellants' first issue and hold the trial court erred to the extent it granted summary judgment against appellants and in favor of Hibdon based on Hibdon's waiver-of-subrogation defense. Our resolution of issue one renders moot appellants' second issue (fair-notice doctrine) and third issue (whether the waiver applies to TPCIGA).

## IV. STATUTORY SUBROGATION AND ASSIGNMENT

In issues four through seven, appellants contend the trial court erred by failing to award $339,999.70 in damages against Hibdon. Appellants argue that they conclusively established their statutory liens. Our analysis of these issues requires interpretation of the relevant statutes.

### A. Rules for Statutory Interpretation

When resolution of an issue requires interpretation of a statute, we review under a *de novo* standard. *Mokkala v. Mead*, 178 S.W.3d 66, 70 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). In construing a statute, our objective is to determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the legislature selected and should not refer to extraneous matters for intent not expressed in the statute. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997).

subrogation waiver does not include RME's employees while contending TPCIGA may sue Hibdon because he is an employee of RME entitled to coverage from Lexington, an unimpaired insurer. *See* Tex. Ins.Code Ann. art. 21.28–C, § 11(a) (assigning to TPCIGA a worker's right to recover under policy issued by an unimpaired insurer to the extent of

### B. Third–Party Administrator

█ We begin with Hibdon's argument that Reliance has no statutory right to recover amounts previously paid because Cunningham Lindsey—not Reliance—paid all the workers' compensation benefits to Valentine and was fully reimbursed by Grey Wolf. Hibdon notes that, in the header of Cunningham Lindsey's payment history, Grey Wolf is denominated as Cunningham Lindsey's "client." Appellants argue that Cunningham Lindsey was Reliance's third-party administrator and made payments on behalf of Reliance. We agree with appellants.

As third-party administrator, Cunningham Lindsey acted as Reliance's agent when it made payments to Valentine. The payments by Cunningham Lindsey satisfied Reliance's contractual obligation to provide workers' compensation coverage to Grey Wolf and its employees. *See, e.g., Dunn v. S. Farm Bureau Cas. Ins. Co.*, 991 S.W.2d 467, 473 (Tex.App.-Tyler 1999, pet. denied) ("When a principal acts through an agent, it is as if the principal acts personally."). Accordingly, we hold the trial court erred to the extent it granted Hibdon's motion for summary judgment based solely on Hibdon's bare assertion that payments were made by and reimbursed to Cunningham Lindsey.

### C. Chapter 417 of the Workers' Compensation Act

We next address appellants' contention that they conclusively established Reli-

TPCIGA's payment to worker). We do not find appellants' contentions inconsistent. As explained, the RME/Grey Wolf contract expressly provided for indemnification in favor of RME *and* its employees, therefore, Grey Wolf's insurer Lexington was obligated to indemnify RME *and* Hibdon.

ance's right to statutory subrogation. Appellants claim that Chapter 417 of the Workers' Compensation Act permits Reliance to exercise subrogation rights relative to Valentine's third-party claim.

■ Chapter 417 of the Act is entitled "Third–Party Liability." The relevant sections of Chapter 417 are as follows:

(a) An employee or legal beneficiary may seek damages from a third party who is or becomes liable to pay damages for an injury or death that is compensable under this subtitle and may also pursue a claim for workers' compensation benefits under this subtitle.

(b) If a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary. The insurance carrier's subrogation interest is limited to the amount of the total benefits paid or assumed by the carrier to the employee or the legal beneficiary, less the amount by which the court reduces the judgment based on the percentage of responsibility determined by the trier of fact under Section 33.003, Civil Practice and Remedies Code, attributable to the employer. If the recovery is for an amount greater than the amount of the insurance carrier's subrogation interest, the insurance carrier shall:

(1) reimburse itself and pay the costs from the amount recovered; and

(2) pay the remainder of the amount recovered to the injured employee or the legal beneficiary.

Tex. Lab.Code Ann. § 417.001 (West 2006).

(a) The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.

Tex. Lab.Code Ann. § 417.002 (West 2006).

According to appellants, these sections afford carriers who pay workers' compensation benefits the right to "first money" from any distribution of third-party funds, regardless of whether they were reimbursed. Appellants argue that the Texas Supreme Court's decision in *Argonaut Insurance Co. v. Baker*, 87 S.W.3d 526 (Tex. 2002), supports their contention that "any payments made under a deductible policy are deemed payments by the insurance carrier, *even if subsequently reimbursed by the employer*." We disagree with appellants' interpretation of *Argonaut*.

The principal issue addressed in *Argonaut* was "whether allowing the carrier to be reimbursed for benefits paid from the deductible, violates [the Insurance Code] which provides that an employee 'may not be required to pay any of the deductible amount.'" *Id.* at 527. The supreme court held that, pursuant to section 417.002, the carrier had a right to subrogation for the full amount of workers' compensation benefits it paid, including the deductible, from an injured employees' settlement with a liable third party. *Id.* at 531. The court reasoned, "When the carrier is fully reimbursed from the recovery from a liable third party ... the money is being paid to the carrier by that responsible third party, not by the employee, pursuant to the carrier's statutory right." *Id.* at 530. The court noted that its holding "is consistent with the Texas Department of Insurance's position":

Rule XIX of the Department's publication *Texas Basic Manual of Rules, Classifications and Experience Rating Plan for Workers' Compensation and Em-*

*ployers' Liability Insurance* (2nd Reprint) provides that "[i]n the event the insurer makes a recovery from a third party through subrogation, the amount recovered shall first be applied to the amount paid on the claim by the insurer and *then to the amount of the deductible paid by the insured, with reimbursement being made to the insured, if necessary.*" *Id.* at R[44–45]. This construction is reasonable and consistent with the statute's plain language, and is therefore entitled to "serious consideration." *Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993). *Argonaut,* 87 S.W.3d at 531 (emphasis added).

We note that *Argonaut* did not involve subrogation rights of a carrier that had been *fully reimbursed for the workers' compensation benefits previously paid.* In fact, the dissent informs us that the carrier had not been reimbursed: "The [majority] permits [the carrier] to recover the amount of the deductible from [the employee's] settlement, instead of from [the employer,] even though [the employer] is legally responsible under the Insurance Code for paying the deductible, *and has not done so."* *Argonaut,* 87 S.W.3d at 532 (Hankinson, J., dissenting) (emphasis added). Additionally, appellant's position is not supported by the cited Department of Insurance publication, which merely expresses that, "in the event" a carrier receives a recovery from a liable third party, the carrier should first reimburse itself for the amount paid above the deductible, then the amount paid as the deductible, then its insured, if necessary. Even if the publication could be interpreted to support the contention that a fully-reimbursed carrier has first priority to recover from a liable third party, the supreme court did not cite the publication for such proposition. Instead, the publication was cited to acknowledge the Department's position that

a carrier may recover its deductible from a third party without violating the Insurance Code. Accordingly, *Argonaut* does not support the contention that a workers' compensation insurance carrier may assert subrogation rights against an insured's employee who recovers from a third party after the workers' compensation carrier has been fully reimbursed. The parties have not cited, and we have not identified, any authority addressing this specific issue.

■■■ We turn to the above cited subrogation provisions in Chapter 417. Statutory subrogation is governed by the terms of the statute under which it is claimed. *Tex. Ass'n of Sch. Bds., Inc. v. Ward,* 18 S.W.3d 256, 259 (Tex.App.-Waco 2000, pet. denied). "[T]he plain language of [section 417.001] removes any question as to whether [Reliance] has the right to subrogation, but it does not answer the question of" whether the right ends when Reliance is reimbursed. *Id.* "Rather, that question must be answered by an examination of what rights the Legislature created when it established the right to 'subrogation' under section [417.001]." *Id.* at 259–60.

Under the Chapter, a carrier's right to subrogation "is limited to the amount of the total benefits paid or assumed by the carrier to the employee.... If the recovery is for an amount greater than the amount of the insurance carrier's subrogation interest, the insurance carrier shall: (1) *reimburse* itself ...; and (2) pay the remainder ... to the injured employee...." Tex. Lab.Code Ann. § 417.001(b) (emphasis added). The next section of the Chapter expresses, "The net amount recovered by a claimant in a third-party action shall be used to *reimburse* the insurance carrier for benefits ... that have been paid...." *Id.* § 417.002(a) (emphasis added). We acknowledge that Chapter

417 contemplates situations in which the carrier recovers an amount exceeding its subrogation interests and must distribute the amount to the injured employee. However, nothing in Chapter 417 authorizes or obligates a carrier to pursue subrogation even when it has no present debt.

The principal purpose of these sections is to ensure that workers' compensation carriers are *reimbursed* when a third party is liable for the injured employee's damages. The plain meaning of "reimburse" is "to pay back (an equivalent for something taken, lost, or expended) to someone." Webster's Third Int'l Dictionary 1914 (1993). It is axiomatic that once a party has been reimbursed, there is no need to assert subrogation. *Cf. Burns v. Ledbetter,* 56 Tex. 282, 286 (1882) (holding, in context of equitable subrogation, "[W]e do not find it necessary to inquire whether Ledbetter should have been granted the equitable relief of subrogation or not, *for it now appears that he has been reimbursed and does not need subrogation.*" (emphasis added)). Grey Wolf fully reimbursed Reliance pursuant to section 2053.203 of the Insurance Code which requires an insured to reimburse a carrier for any amount the carrier paid an employee within the self insured deductible. *See* Tex. Ins.Code Ann. § 2053.203(b)(2). Consequently, there was no summary-judgment evidence supporting Reliance's contention that it had a present statutory-subrogation interest in sums paid to Valentine. Moreover, there was no summary-judgment evidence that Reliance is fulfilling a duty to recover and reimburse any sum of money to Grey Wolf; in fact, the record contains the affidavit of a Grey Wolf representative who stated that Reliance is not authorized to seek subrogation on behalf of Grey Wolf.

Thus, having been fully reimbursed pursuant to section 2053.203, it is absurd for Reliance to pursue a statutory-subrogation action. Applying the plain meaning of section 417.002(a) to these facts, there was no sum of money recovered "by a claimant in a third-party action" which is necessary "to reimburse the insurance carrier for benefits." Tex. Lab.Code Ann. § 417.002(a). Instead, the amount recovered by Valentine is "treated as an advance against future benefits ... [he] is entitled to receive." *Id.* § 417.002(b). Therefore, we conclude Reliance is not entitled to prosecute a subrogation action because it has no subrogated interest to pursue under Chapter 417.[6]

Our conclusion does not contravene the long-held principle that workers' compensation carriers have a right to "first money" recovered. "For decades, Texas law has required the first money recovered by an injured worker from a tortfeasor to go to the worker's compensation carrier, and until the carrier *'is paid in full* the employee or his representatives have no right to any funds.'" *Tex. Mut. Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 33 (Tex.2008) (emphasis added) (*quoting Argonaut,* 87 S.W.3d at 530); *Fort Worth Lloyds v. Haygood,* 151 Tex. 149, 156, 246 S.W.2d 865, 869 (1952); *see also Estrada v. Wausau, Ins. Co.,* 985 S.W.2d 480, 483–85 (Tex. App.-San Antonio 1998, pet. denied) (holding that money paid to injured employee by liable third-party's insurer rightfully belonged to carrier even though liable third-party's insurer later settled with carrier for an amount that *partially* reimbursed the carrier for benefits it paid); *Hartford Cas. Ins. Co. v. Albertsons Grocery Stores,* 931 S.W.2d 729, 734 (Tex. App.-Fort Worth 1996, no writ) ("[A]fter

---

**6.** Our disposition should not be interpreted or cited as authority for claimants, insurance carriers, employers, or third parties to circumvent the priority of payment and allocation of sums recovered in third-party actions as prescribed under Chapter 417.

an employee has collected workers' compensation, the employee has no cause of action against the third party until the carrier has recovered the amount it paid the employee."). This extensive lineage of cases supports the proposition that carriers have a right to "first money" *until they are paid in full.* Appellants were paid in full; they no longer have a right to "first money."

Appellants argue that permitting Hibdon to remit directly to Valentine in this situation will result in a double recovery for Valentine. *See Ledbetter,* 251 S.W.3d at 33 (explaining that "[f]irst-money recovery ... prevents double recovery by workers"); *Foreman v. Sec. Ins. Co. of Hartford,* 15 S.W.3d 214, 216 (Tex.App.-Texarkana 2000, no pet.) ("The rationale for permitting subrogation of workers' compensation payments is to prevent double recoveries by injured employees, while permitting carriers to recover some of their disbursements, thus keeping rates lower."). Of course, requiring Hibdon to pay any amount to the previously reimbursed appellants would provide them a double recovery. Further, we disagree with the contention that allowing Hibdon to remit directly to Valentine affords him a double recovery detrimental to appellants' subrogation rights. Chapter 417 ensures that Valentine's recovery will be

credited toward any future benefits appellants are required to pay: "Any amount recovered that exceeds the amount of the reimbursement required ... shall be treated as an advance against future benefits...." Tex. Lab.Code Ann. § 417.002(b); *Tex. Workers' Comp. Ins. Fund v. Travis,* 912 S.W.2d 895, 898 (Tex. App.-Fort Worth 1995, no writ) ("Any amount of payment received by a claimant from a third-party over the amount used to reimburse the workers' compensation carrier is treated as an advance against future payments by the carrier.").

Accordingly, we conclude that the trial court did not err by denying appellants' motion for summary judgment based on appellants' contention that they conclusively established the amount of their statutory-subrogation interest against Hibdon. Nevertheless, we conclude the trial court erred to the extent it granted Hibdon's motion for summary judgment against Reliance. In his motion for summary judgment, Hibdon argued only that Reliance was not owed any sum because Cunningham Lindsey paid Valentine's workers' compensation benefits—an argument we have rejected.[7] Hibdon did not present evidence or argument in support of the contention that Reliance has no statutory lien because it had been fully reimbursed.[8] Thus, we overrule in part and sustain in

---

7. In his no-evidence motion for summary judgment, Hibdon argued that "Reliance cannot present a scintilla of evidence that would create a genuine issue of material fact that it paid a penny to or on behalf of Lee Valentine. Thus, Reliance has no evidence that it is entitled to recovery of any sums ... [or] that it has a valid interest...." Consequently, Hibdon's no-evidence challenge did not burden appellants to present evidence or argument that Reliance is entitled to pursue subrogation rights despite having been fully reimbursed.

8. We acknowledge that Hibdon asserted in his *response* to appellants' motion for summary judgment (filed seven days before the summary judgment hearing) that he was enti-

tled to summary judgment relative to Reliance's claims because Reliance had been fully reimbursed. We do not construe Hibdon's response as a supplemental motion for summary judgment. Therefore, this ground was neither asserted in Hibdon's motion for summary judgment nor considered by the trial court. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993) ("[W]e hold that a motion for summary judgment must itself expressly present the grounds upon which it is made."). Further, nothing in the record indicates the trial court considered Hibdon's response as a supplemental motion.

part appellants' fourth through sixth issues.

### D. Article 21.28–C of the Property and Casualty Insurance Guaranty Act

█ In their seventh issue, appellants contend the trial court erred by denying TPCIGA summary judgment on its claims. According to appellants, they conclusively established TPCIGA's right, under the Insurance Code, to an assignment of Valentine's right to recover $96,602.70 from Lexington (the amount TPCIGA paid in benefits). Appellants direct us to the following provisions in the Texas Insurance Code:

> A person recovering under this Act is considered to have assigned to [TPCIGA] the person's right under the policy, and the person's rights to recover for the occurrence made the basis of the claim under this Act under any policy of insurance issued by an unimpaired insurer to the extent of the person's recovery from the association. The association may pursue any such claims to which it is subrogated under this provision in its own name or in the name of the person recovering under this Act.

Tex. Ins.Code Ann. art. 21.28–C, § 11(a) (current version at section 462.307 of the Texas Insurance Code).[9]

█ Section 11(a) affords TPCIGA an assignment of Valentine's "rights to recover for the occurrence made the basis of the claim under this Act under any policy of insurance issued by an unimpaired insurer." Section 11(a) refers to the right it prescribes as a subrogation right: "[TPCIGA] may pursue any such claims *to which*

*it is subrogated* under this provision in its own name or in the name of the person recovering under this Act." *Id.* (emphasis added); *see also In re Tex. Prop. & Cas. Ins. Guar. Ass'n,* 989 S.W.2d 880, 883–84 (Tex.App.-Austin 1999, no pet.) (describing the right prescribed by section 11(a) as a statutory-subrogation right). The legislature's decision to describe the assignment of the claimant's right to recover as a "subrogation" right is logical because "[s]ubrogation places one party in the place of another so that the new party gains the rights of the former party regarding a claim." *Hartford Cas. Ins.,* 931 S.W.2d at 733. Under both section 11 and section 417.001, the insuring entity stands in the place of the claimant against a liable third party to the extent of the claimant's recovery from the insuring entity.[10]

The clear intent of section 11 is to provide TPCIGA means for reimbursement and to ensure the claimant does not receive a double recovery at TPCIGA's expense. Section 11 provides TPCIGA with several methods of reimbursement, including subrogation rights and a limited right of recovery against the insured, but the legislature did not express whether these methods are independently available or mutually exclusive. We interpret section 11 to provide TPCIGA with means for being fully reimbursed *once.* Appellant's proposed interpretation would entitle TPCIGA to full recovery from the insured and full recovery vis-a-vis exercise of statutory-subrogation rights. This interpretation would result in a statutory right to double recovery. *See C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 322 n. 5 (Tex.1994) ("Statutory provisions will not

---

9. Because former article 23.28–C, section 11(a) applies and is virtually identical to section 462.307, we will refer to "section 11."

10. Hibdon argues TPCIGA does not have a cause of action against him because section

11(a) gives TPCIGA a right to recover "under any policy of insurance issued by an unimpaired insurer," and he is not an unimpaired insurer. Our disposition of appellants' seventh issue renders this argument moot.

be so construed or interpreted as to lead to absurd conclusions, great public inconvenience, or unjust discrimination, if the provision is subject to another, more reasonable construction or interpretation.").[11]

Under section 11, Grey Wolf was required to reimburse TPCIGA because Grey Wolf's net worth exceeded a specified amount. *See* Tex. Ins.Code Ann. art. 21.28–C, § 11(b)(1) (current version at section 462.308(a)(2) of the Texas Insurance Code). The parties readily admit Grey Wolf reimbursed TPCIGA for the $96,602.70 paid in benefits to Valentine. Having been fully reimbursed pursuant to the net-worth provision in section 11, TPCIGA has no further right to reimbursement. Additionally, Valentine's recovery from Hibdon actually benefits TPCIGA because it has an offset for future benefits in the amount recovered by Valentine. *See* Tex. Ins.Code Ann. art. 21.28–C, § 12(a).

Accordingly, we overrule appellants' seventh issue and affirm the trial court's order granting summary judgment against TPCIGA claims.

### V. ONE SATISFACTION RULE

Finally, in their eighth issue, appellants argue the trial court could not have considered Hibdon's arguments pertaining to the "one satisfaction rule" because he raised this argument for the first time in his reply to appellants' summary-judgment response.[12] Hibdon argues that appellants were on notice regarding his "one satisfac-

tion rule" argument because he contended in his summary-judgment motion that plaintiffs were owed no sums.

■■■■■ "A motion must stand or fall on the grounds expressly presented in the motion." *See McConnell*, 858 S.W.2d at 341. A reply is not a motion for summary judgment. *Guest v. Cochran*, 993 S.W.2d 397, 403 (Tex.App.-Houston [14th Dist.] 1999, no pet.). A movant is not entitled to use its reply to amend its motion for summary judgment or to raise new and independent summary-judgment grounds. *Garcia v. Garza*, 311 S.W.3d 28, 36 (Tex. App.-San Antonio 2010, pet. denied).

■■■■ In his motion for summary judgment, Hibdon argued that Reliance was owed no sums because it never paid benefits to Valentine—not because it had already been reimbursed. Hibdon did not raise an argument premised upon, or similar to, the "one satisfaction rule" in his motion; therefore, he may not raise it for the first time in his reply. We sustain appellants' eighth issue.

### VI. CONCLUSION

In sum, we affirm those portions of the trial court's orders denying appellants' motion for summary judgment and granting Hibdon's motion for summary judgment relative to TPCIGA's claims. However, we reverse that portion of the trial court's order granting Hibdon's motion for summary judgment relative to Reliance's claims. Accordingly, we remand this case

---

11. During oral argument, appellants argued that TPCIGA will never technically be made whole because of its continuing obligation to pay workers' compensation benefits to Valentine. The Insurance Code addresses this situation by providing TPCIGA an offset pursuant to section 417.002 when its claimant recovers from a third party an amount in excess of the payments already made by TPCIGA. *See* Tex. Ins.Code Ann. art. 21.28–C, § 12(a) (current

version at section 462.252(b) of the Texas Insurance Code).

12. In his reply, Hibdon also argued that TPCIGA had no cause of action because of the "election of remedies" defense. Our disposition of Hibdon's motion for summary judgment relative to TPCIGA's claims renders this argument moot.

to the trial court for further proceedings consistent with this opinion.