# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00688-CV

### Approach Operating, LLC, Appellant

### v.

### Resolution Oversight Corporation, as Special Deputy Receiver of Financial Insurance Company of America; and The Texas Property and Casualty Insurance Guaranty Association, Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-11-01595, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final summary judgment declaring that a subcontractor's workers' compensation carrier had not waived its rights of subrogation entitling it to recoup payments made on behalf of its insured under the Texas Workers' Compensation Act. The general contractor, Approach Operating, LLC, appeals, arguing that the carrier had waived subrogation. We will affirm the district court's judgment.

## BACKGROUND

On January 30, 2004, appellant Approach Operating, LLC, an oil and gas company, entered into a Master Service Agreement ("MSA")[1] with Lilly Construction, Inc., an oilfield service

---

[1] Master Service Agreements are standard contracts within the oilfield industry. *See, e.g.*, *Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 191 (Tex. 2007) (analyzing construction of "industry-standard 'Master Service Agreement'"); *Nabors Corporate*

provider, to perform certain tasks at a lease site in Crockett County. On January 20, 2005, Lilly's employee, Rodolfo Martinez, was injured while cleaning ("pigging") a pipeline on the leased premises. Martinez thereafter filed a claim for workers' compensation benefits, which were paid by Lilly's workers' compensation carrier, Financial Insurance Company of America ("FICA"). On May 26, 2005, the 261st district court in Travis County placed FICA into permanent receivership and appointed Resolution Oversight Corporation as special deputy receiver. Texas Property and Casualty Insurance Guaranty Association ("TPCIGA"), an unincorporated association of all Texas-licensed property and casualty insurers, took over payment of Martinez's workers' compensation benefits in accordance with its statutory duties.[2]

On November 6, 2006, Martinez sued Approach in Crockett County seeking money damages for injuries allegedly caused by Approach's negligence. After Martinez filed suit, FICA and TPCIGA notified all parties of their rights to reimbursement pursuant to the Texas Workers' Compensation Act. *See* Tex. Lab. Code Ann. §§ 417.001(b); 417.002 (West 2006). The Act provides if an injured employee seeks a recovery against a third party who is liable to pay damages, the workers' compensation carrier "is subrogated to the rights of the injured party and may enforce the liability of the third party in the name of the injured party . . . ." *Id*. § 417.001(b). The

---

*Servs. Inc. v. Northfield Ins. Co.*, 132 S.W.3d 90, 93 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (noting parties entered a Master Service Agreement "[a]s is customary in the oil and gas industry").

[2] TPCIGA "is a nonprofit, unincorporated legal entity composed of all member insurers, who must be members of [TPCIGA] as a condition of their authority to transact insurance in the state of Texas . . . . [TPCIGA] stands in the place of a member insurer when such insurer is impaired . . . to the extent of its obligation for covered policy claims unpaid by the impaired insurer . . . ." *Texas Prop. & Cas. Ins. Guar. Ass'n v. De Los Santos*, 47 S.W.3d 584, 585 n.1 (Tex. App.—Corpus Christi 2001, no pet.); *see generally* Tex. Ins. Code. Ann. §§ 462.001-.351 (West 2009).

Act limits the subrogation interest to "the amount of total benefits paid or assumed by the carrier to the employee . . . less the amount by which the court reduces the judgment based on the percentage of responsibility determined by the trier of fact . . . ." *Id*. The net amount recovered by an injured employee "shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury." *Id*. § 417.002(a). In response, Approach filed a third-party petition joining FICA in the Crockett County suit and seeking a declaration that FICA's right to subrogation had been waived. FICA successfully raised a plea to the jurisdiction, asserting that the district court of Travis County had exclusive jurisdiction over Approach's declaratory claim by virtue of the receivership proceedings. Approach then intervened in the receivership proceedings to assert its declaratory claim there. TPCIGA moved for summary judgment on the ground there was no waiver of subrogation in the MSA between Lilly and Approach. FICA joined in TPCIGA's motion for summary judgment. The district court granted TPCIGA and FICA's motion for summary judgment. The district court then severed Approach's action from the main receivership proceeding by agreed order, making the summary-judgment order final. This appeal followed.

## ANALYSIS

In a single issue, Approach asserts that the district court erred in granting FICA and TPCIGA's summary-judgment motion because their rights to subrogation were waived as a matter of law in the MSA.

### Standard of review

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*,

3

128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). This summary judgment turns on the proper construction of a contract, the MSA. When we construe a written contract, our primary concern is to ascertain and give effect to the intentions the parties have objectively manifested in that instrument. *Frost Nat'l Bank v. L & F Distribs., Ltd*., 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam); *see Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) ("As with any other contract, the parties' intent is governed by what they said, not by what they intended to say but did not."). To that end, we construe the contract in its entirety, considering each part in relation to every other part so that the effect of each part on others may be determined and that no part will be rendered meaningless. *See City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005); *Valence Operating Co*., 164 S.W.3d at 662. Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Id*. In determining the meaning of contract terms, we may also consider the context of the circumstances existing at the time the contract was executed and the particular business activity sought to be served. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd*., 940 S.W.2d 587, 589 (Tex. 1996); *Reilly v. Rangers Mgmt., Inc*., 727 S.W.2d 527, 530 (Tex. 1987). If we can give the contract a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law. *Willis v. Donnelly*, 199 S.W.3d 262, 275 (Tex. 2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). If, on the other hand, the contract is subject to two or more reasonable interpretations, it is ambiguous, which creates a fact issue as to the parties' intent. *Columbia Gas Transmission Corp*., 940 S.W.2d at 589. The mere fact that parties have differing interpretations of "an otherwise straightforward contract" does not make

4

it ambiguous. *W.A. Moncrief v. ANR Pipeline Co.*, 95 S.W.3d 544, 547 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Both sides agree that in order to have a valid waiver of subrogation, two conditions must be met. First, Lilly must obligate itself to a waiver pursuant to an underlying contract with Approach (here, the MSA), and second, it must obtain a separate endorsement from its insurance carrier waiving those rights. *See, e.g.*, *Chevron U.S.A. v. Cigna*, No. 09-97-00032-CV, 1998 WL 472501, at *3-4 (Tex. App.—Beaumont Aug. 13, 1998, pet. denied) (not designated for publication) (enforcing waiver of subrogation clause); *see also Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 355 (Tex. 2000) (noting subrogation waiver in underlying contract and separate endorsement, but holding insurer's claims were outside scope of waiver).

We recently addressed the second requirement and held there was no valid waiver of subrogation when an agreement obligated a party to purchase insurance waiving subrogation, but the insurance policy itself contained no waiver of subrogation. *Austin Indep. Sch. Dist. v. H.C. Beck Partners, Ltd.*, No. 03-07-00228-CV, 2009 WL 638189, at *2 (Tex. App.—Austin Mar. 13, 2009, pet. denied) (mem. op.). In that case, AISD contracted with H.C. Beck for mold remediation in an elementary school. *Id*. at *1. One of H.C. Beck's subcontractors damaged AISD's property, and AISD's insurance carrier paid for the repairs. *Id*. AISD sued H.C. Beck and, in accordance with AISD's policy, the carrier was subrogated to AISD's claims. *Id*. H.C. Beck moved for summary judgment asserting, among other things, the carrier had no subrogation right. *Id*. The district court granted the motion, but we reversed. *Id*. at *4.

The agreement between AISD and H.C. Beck provided that "[AISD] shall purchase and maintain liability and property insurance, including waivers of subrogation." *Id*. at *1.

H.C. Beck argued that provision constituted a waiver of subrogation. *Id*. at *2. We concluded the provision was "not, itself, a waiver of subrogation rights." *Id*. Instead, "such a waiver must be part of the insurance policy obtained by AISD." *Id*. But AISD's policy did not contain an explicit waiver of subrogation. *Id*. The policy described the carrier's subrogation right, then stated AISD "may waive its rights against another party by specific written agreement . . . ." *Id*. at *1. This language did not waive subrogation rights, rather it merely allowed AISD "to release or waive claims by 'specific written agreement' under certain circumstances." *Id*. at *3. H.C. Beck did not contend AISD had released or waived the claims at issue in the lawsuit. *Id*. Enforcing the contracts as written, we concluded, "[w]ithout an express waiver of subrogation by the insurer or a release or waiver of claims by the insured in this case, the insurer's subrogation rights remain governed by its policy with the insured." *Id*.; *see also Munters Euroform GMBH v. American Nat'l Power, Inc.*, No. 03-05-00493-CV, 2009 WL 5150033, at *3-4 (Tex. App.—Austin Dec. 31, 2009, pet. dism'd) (mem. op.) (when insurance policy contained no waiver of subrogation, construction contract's commitment to obtain waiver of subrogation from insurer did not waive insurer's subrogation rights).

In this case, we must consider the opposite situation. It is undisputed that Lilly obtained the requisite separate endorsement from its insurer FICA. The endorsement provides:

> [FICA has] the right to recover [its] payments from anyone liable for an injury covered by this policy. [FICA] will not enforce [its] right against the person or organization named in the Schedule, but ***this waiver applies only*** with respect to bodily injury arising out of the operations described in the Schedule ***where [Lilly is] required by a written contract to obtain this waiver from [FICA.]***

6

(Emphasis added.) The endorsement also contains a blanket waiver, which applies to "[a]ny person or organization for whom [Lilly] **has agreed by written contract to furnish this waiver**." (Emphasis added.) By the endorsement's plain language, the subrogation waiver is inoperative unless an underlying contract requires Lilly to obtain a waiver from FICA.

Approach contends the MSA contained the necessary waiver of subrogation language. It points to paragraph 3 of the MSA:

> 3. [Lilly] agrees to pay and discharge all valid taxes, lienable claims, charges or other impositions imposed or to be imposed by law on [Lilly], arising out of, in conjunction with or resulting from works performed hereunder . . . .

Approach argues the phrase "lienable claims" refers to workers' compensation benefits based on "standard industry usage." Because the workers' compensation lien at issue arose by application of the lien provisions of the Texas Labor Code based upon benefits paid by FICA and TPCIGA, Approach claims, Lilly "obligated itself to discharge any liens" including the workers' compensation lien at issue. While that may or may not be true, that is not the question. Rather the question is whether or not the MSA obligated Lilly to procure insurance that waived subrogation rights.[3]

As appellees note, the MSA never mentions the term "subrogation" in any form. While requiring Lilly to maintain workers' compensation insurance at certain limits, it contains

---

[3] An agreement in the MSA obligating Lilly to waive subrogation rights would not suffice. *See Austin Indep. Sch. Dist. v. H.C. Beck Partners, Ltd.*, No. 03-07-00228-CV, 2009 WL 639189, at *2 n.3 (Tex. App.—Austin Mar. 13, 2009, pet. denied) (mem. op.). "Subrogation rights, when they exist, belong to the subrogated party." *Id.* In the insurance context, "these rights belong to and are waivable by the insurer—not the insured." *Id.*

no explicit requirement that the workers' compensation carrier waive its subrogation rights.[4]

Appellees point to several cases that examine valid and explicit waivers of subrogation. For instance, in *Chevron*, general contractor Borinquen entered an agreement with Chevron to provide construction services. 1998 WL 472501, at *1. Under a heading labeled "Worker's Compensation and Employers' Liability Insurance," the agreement obligated the general contractor to obtain a waiver of subrogation from any subcontractors:

> 6.2 Policy Endorsements: . . . . ***The insurance . . . shall contain a waiver of subrogation against indemnities*** [*sic.*] [Chevron] and an assignment of statutory lien, if applicable. . . .
>
> 6.4 Insurance required from Subcontractors: . . . CONTRACTOR shall obtain from its subcontractors, if any, the insurance coverages and endorsements set forth in section 6.1, 6.2, and 6.3 . . . .

*Id*. at *2-3 (emphasis added). Borinquen then entered an agreement with a subcontractor explicitly requiring a waiver of subrogation: "***Subcontractor hereby waives all rights of subrogation*** that it or its insurers may have against Contractor's Clients . . . ." *Id*. at *3 (emphasis added). The agreement also required the subcontractor to obtain an insurance certificate indicating that "***Rights of subrogation*** against Contractor Clients . . . ***shall be waived under the Worker's Compensation policy described in item (a) above***." *Id*. (emphasis added). The court held (1) the contract between

---

[4] Paragraph 12 of the MSA requires Lilly to "secure and maintain . . . insurance in the types and amounts and under the conditions shown in Exhibit A . . . ." Exhibit A to the MSA requires Lilly to provide certificates to evidence various insurance policies including, "Workers' Compensation Insurance in full compliance with all applicable state and federal laws and regulations (where necessary for property coverage of such operations, this insurance shall be endorsed to cover the U.S. Longshoremen's and Harbor Workers' Act including extension to the Outer Continental Shelf), and Employer's Liability insurance in the minimum limits of $100,000 (where necessary for proper coverage such insurance shall include the endorsements to cover maritime operations)."

Chevron and Borinquen unambiguously included a waiver of subrogation clause in favor of Chevron and (2) the contract between Borinquen and subcontractor also contained a waiver of subrogation clause in favor of Chevron. *Id*. The court then examined the subcontractor's insurance endorsement, which contained a blanket waiver of subrogation rights as "to any person or organization for whom the [subcontractor] has agreed by written contract to furnish this waiver." *Id*. Because the contract between Borinquen and the subcontractor required a waiver of subrogation, and the subcontractor obtained a blanket waiver from its insurer, the court concluded the waiver of subrogation was valid. *Id*.; *see also Walker Eng'g v. Bracebridge Corp.*, 102 S.W.3d 837, 840-41 (Tex. App.—Dallas 2003, pet. denied) (enforcing explicit waiver of subrogation in contract).

Approach contends the "express terms of the MSA" similarly required a waiver of subrogation. Unlike the cases discussed above, however, the MSA contains no explicit mention of subrogation. And Approach points to no authority indicating we may infer a waiver of subrogation. On the contrary, Texas courts require explicit waivers of subrogation and will not read them into contracts. For example, in *Reliance Ins. Co. v. Hibdon*, the court refused to find a waiver of subrogation in favor of a company's employee when the clause only explicitly mentioned the employer. 333 S.W.3d 364, 370 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). In that case, petroleum company RME contracted with drilling company Grey Wolf. *Id*. The agreement obligated Grey Wolf to secure a waiver of subrogation from its insurer in favor of RME but did not mention RME's employees. *Id*. Grey Wolf purchased a workers' compensation policy in which its insurer, Reliance, agreed not to enforce its right to subrogation against certain people or organizations in whose favor Grey Wolf was required by written contract to obtain a waiver

9

of subrogation. *Id.*[5] When one of Grey Wolf's employees was injured, Reliance paid his workers' compensation benefits until it went into receivership, at which point TPCIGA assumed the payments. *Id.* at 367-68. The injured employee filed a third-party action against RME and its employee Hibdon. *Id.* at 368. After Hibdon settled the lawsuit, Reliance and TPCIGA sued Hibdon contending he was obligated to pay them before paying the injured employee. *Id.* Hibdon moved for summary judgment arguing, among other things, Reliance and TPCIGA waived their rights of subrogation. *Id.* The district court granted Hibdon's motion for summary judgment, and Reliance and TPCIGA appealed. *Id.*

Reliance and TPCIGA argued the waiver of subrogation provision did not apply to Hibdon because it did not specifically mention employees. *Id.* at 369-70. As support, the appellants pointed to a separate indemnity provision in the contract, which explicitly included employees among those covered. *Id.* at 370. They argued, and the court agreed, the "absence of the term 'employees' in the waiver-of-subrogation provision reflects the parties' intention that the waiver was to benefit RME, not individual employees." *Id.* The court found the waiver "straightforward" and "unambiguous." *Id.* at 371. "If the parties had intended to provide a subrogation waiver in Hibdon's favor, they could have added the term 'employees' to the provision." *Id.* The court refused to "impermissibly add language to the provision by interpreting it to include a waiver of subrogation in favor of RME's employees." *Id.* at 371; *see also Continental Cas. Co. v. Fina Oil & Chem. Co.,*

---

[5] The subrogation clause tracks the language found in FICA's policy: "We [Reliance] have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but the waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us."

10

126 S.W.3d 163, 170-71 (Tex. App.—Houston [1st Dist.] 2004), *rev'd on other grounds sub nom.*

*Atofina Petrochemicals, Inc. v. Continental Cas. Co.*, 185 S.W.3d 440 (Tex. 2005) (per curiam)

(holding insurer did not waive right of subrogation when relevant writing made single mention

of insurance, with no specific details or terms and "made no reference at all to subrogation or

a waiver"). In this case, Approach asks us not just to add language to enlarge the scope of an

otherwise unambiguous subrogation waiver, rather it demands we add an entire subrogation waiver

clause into an otherwise unambiguous contract. This we cannot do. *See, e.g.*, *American Mfrs. Mut.*

*Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties'

contract nor add to its language.").

 Approach also points to an indemnity clause in the MSA which obligated Lilly (and

its successors-in-interest) to protect and release Approach from any and all claims or demands of any

kind or character. Approach argues this includes a claim for subrogation and asks us to construe the

indemnity clause as requiring a waiver of subrogation.[6] Again, Approach cites no cases to support

the proposition that we can treat indemnity clauses as implied waiver of subrogation clauses. *See*

Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions

made, with appropriate citations to authorities and to the record.").

---

 [6] The indemnity clause provides in part: "Contractor's Indemnification of Approach: CONTRACTOR SHALL RELEASE APPROACH FROM ANY LIABILITY FOR, AND SHALL PROTECT, DEFEND (INCLUDING ALL COSTS, EXPENSES AND ATTORNEYS' FEES), INDEMNIFY, AND SAVE APPROACH, ITS OFFICERS, DIRECTORS, EMPLOYEES, AFFILIATED COMPANIES, OTHER CONTRACTORS AND JOINT OWNERS (THE "*APPROACH INDEMNIFIED PARTIES*") HARMLESS FROM AND AGAINST ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF . . . ."

Approach concludes by noting that subrogation rights can be waived or altered by contract. *See, e.g.*, *Lancer v. Murillo*, 909 S.W.2d 122, 127 (Tex. App.—San Antonio 1995, no writ) (holding appellant judicially admitted it was subrogated to plaintiff's rights and therefore could not claim waiver of subrogation); *National Union Fire Ins. Co. v. Pennzoil*, 866 S.W.2d 248, 251-52 (Tex. App.—Corpus Christi 1993, no writ) (enforcing unambiguous waiver of subrogation clause). We certainly agree with this general proposition, but Approach pointed to no language in the MSA demonstrating subrogation rights were waived or altered in this case.

We affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   July 3, 2012